# UNITED STATES *v.* JU TOY.

## CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 535.   Argued April 3, 1905.—Decided May 8, 1905.

Even though the Fifth Amendment does apply to one seeking entrance to this country, and to deny him admission may deprive him of liberty, due process of law does not necessarily require a judicial trial and Congress may entrust the decision of his right to enter to an executive officer.

Under the Chinese exclusion, and the immigration, laws, where a person of Chinese descent asks admission to the United States, claiming that he is a native born citizen thereof, and the lawfully designated officers find that he is not, and upon appeal that finding is approved by the Secretary of Commerce and Labor, and it does not appear that there was any abuse of discretion, such finding and action of the executive officers should be treated by the courts as having been made by a competent tribunal, with due process of law, and as final and conclusive; and in *habeas corpus* proceedings, commenced thereafter, and based solely on the ground of the applicant's alleged citizenship, the court should dismiss the writ and not direct new and further evidence as to the question of citizenship.

A person whose right to enter the United States is questioned under the immigration laws is to be regarded as if he had stopped at the limit of its jurisdiction, although physically he may be within its boundaries.

THE facts are stated in the opinion.

*Mr. Assistant Attorney General McReynolds* for the United States:

Congress by constitutional enactments has entrusted to executive officers as a special tribunal determination of all

questions of fact—including a claim of citizenship—relating to the right of Chinese to enter the United States; and a bare allegation of citizenship is not enough to support a petition for *habeas corpus* by one denied admission.

*United States* v. *Sing Tuck*, 194 U. S. 161, settled that a Chinaman seeking admission into the United States because of alleged birth therein must in the first instance submit his claim to the determination of immigration officers. Such officers have a right to decide upon all questions of fact, including that of citizenship. The applicant may not ignore them and appeal directly to the courts for determination of his rights. A writ of *habeas corpus* should not be granted until he has prosecuted an appeal to the Secretary of Commerce and Labor as provided by the statute. After the Secretary has, upon appeal, affirmed the action of immigration officers excluding a Chinaman a petition for *habeas corpus* should not be entertained unless the court is satisfied petitioner can make out a *prima facie* case; a mere allegation of citizenship is not enough.

Whether after final rejection by the Secretary, there ought to be a further trial upon *habeas corpus* upon a petition showing reasonable cause was not decided.

In behalf of Sing Tuck it was earnestly insisted that a claim of citizenship is a judicial question, determination of which is granted exclusively to the courts by Art. 3, § 2, of the Constitution, and Congress has no power to entrust it to executive officers; moreover, to require an applicant for admission to submit such a claim to an immigration officer violates the prohibition of the Fifth Amendment that no person shall be deprived of his liberty without due process of law. See also *Lem Moon Sing* v. *United States*, 158 U. S. 538, 546; *Chin Bak Kan* v. *United States*, 186 U. S. 193, 200; *Japanese Emigrant Case*, 189 U. S. 86, 97. As to due process of law not always requiring a proceeding before a court and power of Congress to delegate matters to executive officers see *Murray* v. *Hoboken Co.*, 18 How. 272, 280; *Springer* v. *United States*, 102 U. S. 586, 594; *Hilton* v. *Merritt*, 110

U. S. 97, 107; *Robertson* v. *Baldwin*, 165 U. S. 275; *Fong Yue Ting* v. *United States*, 149 U. S. 698, 713; *Public Clearing House* v. *Coyne*, 194 U. S. 497, 508; *Bushnell* v. *Leland*, 164 U. S. 684.

In both England and America the rule is that probable cause must first be shown to obtain the writ of *habeas corpus*, whether it be granted at common law or under the statute. Church on Hab. Corp., 2d ed., § 92; *Ex parte Watkins*, 3 Pet. 193; *Ex parte Milligan*, 4 Wall. 2, 110; *Ex parte Royall*, 117 U. S. 250; *Ex parte Terry*, 128 U. S. 301.

Where the law has confided to a special tribunal authority to hear and determine matters arising in the course of its duties, a decision by it within the scope of its authority as to questions of fact is conclusive against collateral attack. Where the jurisdiction depends upon a question of fact which is the very gist of the controversy, the determination of that is generally final. *Gonzales* v. *United States*, 192 U. S. 1; *United States* v. *Arredondo*, 6 Pet. 691, 729; *Quimby* v. *Conlan*, 104 U. S. 420, 425; *United States* v. *California &c. Land Co.*, 148 U. S. 31, 43.

Where the decision of questions of fact is committed by Congress to the head of a Department, his decision thereon is conclusive; and even upon mixed questions of law and of fact, or of law alone, his action carries a strong presumption of its correctness and the courts will not ordinarily review it, although they may have the power, and will occasionally exercise the right of so doing. Cases *supra* and *Foley* v. *Harrison*, 15 How. 447; *Rubber Co.* v. *Goodyear*, 9 Wall. 798; *Shepley* v. *Cowan*, 91 U. S. 340; *Moore* v. *Robbins*, 96 U. S. 535; *Steel* v. *Smelting Co.*, 106 U. S. 450; *Hadden* v. *Merritt*, 115 U. S. 25; *Lee* v. *Johnson*, 116 U. S. 51; *Heath* v. *Wallace*, 138 U. S. 585; *Burfenning* v. *Chi., St. P. &c. Ry.*, 163 U. S. 323; *Bushnell* v. *Leland*, 164 U. S. 684; *Gardner* v. *Bonesteel*, 180 U. S. 369; *Bates & Guild Co.* v. *Payne*, 194 U. S. 106.

Where the jurisdiction of a tribunal of special or limited

authority may be said to depend upon the existence of a
certain state of facts which it must pass upon, its decision
thereon, if there was any evidence on which to base it, must
be held final and conclusive in all collateral inquiries. Cooley's
Const. Lim., 7th ed., 586, and authorities there cited; 17
Am. & Eng. Ency of Law, 2d ed., 1085, and authorities there
cited; Church on Hab. Corp., 2d ed., 381, 517; *People ex
rel. Tweed* v. *Liscomb,* 60 N. Y. 559, 568; *People's Bank* v.
*Wilcox,* 15 R. I. 258; *Evansville &c. R. R. Co.* v. *Evansville,*
15 Indiana, 395; *Brittain* v. *Kinnaird,* 1 B. & B. 432; *Simmons*
v. *Saul,* 138 U. S. 439, 452; *New Orleans* v. *Fisher,* 180 U. S.
185; *Wanzer* v. *Howland,* 10 Wisconsin, 8, 16; *Comstock* v.
*Crawford,* 3 Wall. 402; *Thompson* v. *Whitman,* 18 Wall. 457,
468.

A *habeas corpus* proceeding is collateral to one the validity
of which is attacked thereby. *In re Lennon,* 166 U. S. 548,
553; *Ex parte Watkins,* 3 Pet. 193.

The function of *habeas corpus* is to test the legality of con-
finement, and unless that appears contrary to law the writ
should not be granted. Immigration officers are required to
exclude every Chinaman who fails to show before them a right
of entry. The detention necessary to secure return of an
excluded one can not be illegal unless the exclusion resulted
from fraud or mistake or from some illegal or unwarranted
action by the officers in the proceedings before them.

The purpose of a writ of *habeas corpus* is to inquire into the
legality of the confinement, and unless the court finds such
confinement contrary to law the writ should be dismissed.
*Ekiu* v. *United States,* 142 U. S. 651, 662; *Ex parte Curtis,* 106
U. S. 375; *Wales* v. *Whitney,* 114 U. S. 571; *Carter* v. *Mc-
Claughry,* 183 U. S. 381. Unless the return to a writ of *habeas
corpus* is in some way traversed the facts therein stated must
be taken as true. *Crowley* v. *Christensen,* 137 U. S. 94. The
writ of *habeas corpus* can not properly be used to perform the
function of a writ of error or appeal. *Ex parte Watkins,* 3
Pet. 201; *Wales* v. *Whitney,* 114 U. S. 571.

*Mr. Hayden Johnson,* with whom *Mr. Henry C. Dibble* and *Mr. Oliver Dibble* were on the brief, for appellee:

It appears that the District Court found as a fact, upon evidence taken contradictorily with the United States that appellee was born in the United States and is a citizen óf the United States.

The legal presumption is that this judgment was based upon sufficient legal evidence and that the judgment is valid, assuming that the court had jurisdiction to issue the writ and was not concluded from trying the matter by the previous adverse decision of the immigration officials, as contended by the Government.

Such persons as the appellee are citizens of the United States and are entitled to all the rights of citizenship. The Chinese exclusion and restriction laws do not apply to them. *United States* v. *Wong Kim Ark,* 169 U. S. 653. As citizens, they have the right to travel abroad and to return to the United States. If the contention of the Government in this behalf is sustained, they must do so at the peril of being excluded and deported by immigration officers appointed to deal with objectionable aliens, and they must be denied the right of appeal to the courts for a judicial determination of the claim of citizenship.

Citizenship is a right of incalculable value. It is a right of which a man cannot be deprived, constitutionally, except by due process of law. In this connection it is the exact equivalent of the right of liberty. Due process of law, in this regard, is judicial process—the right and opportunity to be heard in a judicial tribune of competent jurisdiction.

No act of Congress can be construed or understood to be a bar to a judicial hearing and determination of the question of citizenship. *Gee Fook Sing* v. *United States,* 49 Fed. Rep. 146.

The act of August 18, 1894, under which it is asserted by the Government in this proceeding that the immigration officials may finally pass upon the claim of a native Chinese to the right of citizenship, applies in terms to aliens only:

This court held in the case of *Sing Tuck*, 194 U. S. 160, that the immigration officials must determine in the first instance the claim of nativity when preferred by an arriving Chinese and that a writ of *habeas corpus* should not issue until such claim has been passed upon in an orderly manner by the Department of Commerce and Labor. The Government now seeks to obtain a decision that the determination by the Department as to the claim of nativity is and must be final. But Congress has not said that such decision shall be final. The act relied upon applies to aliens only, as already said. There is no rule of law under which it can be contended that such a decision is final. *Johnson* v. *Towsley*, 13 Wall. 83.

Due process of law in a matter affecting the right of a man to be free—the claim of the right to be and remain in one's native land and not to be deported therefrom, certainly involves the right of personal liberty—due process of law in this regard implies the right to have that right determined in a judicial proceeding by a constitutional court of justice. The proceeding may be never so summary, still, these fundamental rules and rights must be recognized and accorded.

Citizens of Chinese descent constitute a class of persons —a class of citizens. Can it be contended that Congress has the constitutional power to suspend the writ of *habeas corpus* or to deny the right of the writ to any class of citizens?

*Habeas corpus* is the proper and the only remedy in these cases. *In re Jew Wong Loy*, 91 Fed. Rep. 240; *In re Jung Ah Lung*, 25 Fed. Rep. 141, aff'd 124 U. S. 621.

MR. JUSTICE HOLMES delivered the opinion of the court.

This case comes here on a certificate from the Circuit Court of Appeals presenting certain questions of law. It appears that the appellee, being detained by the master of the Steamship Doric for return to China, presented a petition for *habeas corpus* to the District Court, alleging that he was a native-born citizen of the United States, returning after a temporary

departure, and was denied permission to land by the collector of the port of San Francisco. It also appears from the petition that he took an appeal from the denial, and that the decision was affirmed by the Secretary of Commerce and Labor. No further grounds are stated. The writ issued and the United States made return, and answered showing all the proceedings before the Department, which are not denied to have been in regular form, and setting forth all of the evidence and the orders made. The answer also denied the allegations of the petition. Motions to dismiss the writ were made on the grounds that the decision of the Secretary was conclusive and that no abuse of authority was shown. These were denied, and the District Court decided seemingly on new evidence, subject to exceptions, that Ju Toy was a native-born citizen of the United States. An appeal was taken to the Circuit Court of Appeals alleging errors the nature of which has been indicated. Thereupon the latter court certified the following questions:

"First. Should a District Court of the United States grant a writ of *habeas corpus* in behalf of a person of Chinese descent being held for return to China by the steamship company which brought him therefrom, who having recently arrived at a port of the United States made application to land as a native-born citizen thereof and who, after examination by the duly authorized immigration officers, was found by them not to have been born in the United States, was denied admission and ordered deported, which finding and action upon appeal was affirmed by the Secretary of Commerce and Labor, when the foregoing facts appear to the court and the petition for the writ alleges unlawful detention on the sole ground that petitioner does not come within the restrictions of the Chinese exclusion acts, because born in and a citizen of the United States and does not allege or show in any other way unlawful action or abuse of their discretion or powers by the immigration officers who excluded him?

"Second. In a *habeas corpus* proceeding should a District

Court of the United States dismiss the writ or should it direct a new or further hearing upon evidence to be presented where the writ had been granted in behalf of a person of Chinese descent being held by the steamship company for return to China from whence it brought him, who recently arrived from that country and asked permission to land upon the ground that he was born in and was a citizen of the United States, when the uncontradicted return and answer show that such person was granted a hearing by the proper immigration officers who found he was not born in the United States, that his application for admission was considered and denied by such officers, and that the denial was affirmed upon appeal to the Secretary of Commerce and Labor, and where nothing more appears to show that such executive officers failed to grant a proper hearing, abused their discretion, or acted in any unlawful or improper way upon the case presented to them for determination?

"Third. In a *habeas corpus* proceeding in a District Court of the United States instituted in behalf of a person of Chinese descent being held for return to China by the steamship company which recently brought him therefrom to a port of the United States and who applied for admission therein upon the ground that he was a native-born citizen thereof but who, after a hearing, the lawfully designated immigration officers found was not born therein and to whom they denied admission which finding and denial, upon appeal to the Secretary of Commerce and Labor, was affirmed—should the court treat the finding and action of such executive officers upon the question of citizenship and other questions of fact as having been made by a tribunal authorized to decide the same and as final and conclusive unless it be made affirmatively to appear that such officers, in the case submitted to them, abused the discretion vested in them or in some other way in hearing and determining the same committed prejudicial error?"

We assume in what we have to say, as the questions assume,

that no abuse of authority of any kind is alleged. That being out of the case, the first of them is answered by the case of *United States* v. *Sing Tuck*, 194 U. S. 161, 170. "A petition for *habeas corpus* ought not to be entertained, unless the court is satisfied that the petitioner can make out at least a *prima facie* case." This petition should have been denied on this ground, irrespective of what more we have to say, because it alleged nothing except citizenship. It disclosed neither abuse of authority nor the existence of evidence not laid before the Secretary. It did not even set forth that evidence or allege its effect. But as it was entertained and the District Court found for the petitioner it would be a severe measure to order the petition to be dismissed on that ground now, and we pass on to further considerations.

The broad question is presented whether or not the decision of the Secretary of Commerce and Labor is conclusive. It was held in *United States* v. *Sing Tuck*, 194 U. S. 161, 167, that the act of August 18, 1894, c. 301, § 1, 28 Stat. 372, 390, purported to make it so, but whether the statute could have that effect constitutionally was left untouched, except by a reference to cases where an opinion already had been expressed. To quote the latest first, in *The Japanese Immigrant Case* (*Yamataya* v. *Fisher*), 189 U. S. 86, 97, it was said: "That Congress may exclude aliens of a particular race from the United States; prescribe the terms and conditions upon which certain classes of aliens may come to this country; establish regulations for sending out of the country such aliens as come here in violation of law; and commit the enforcement of such provisions, conditions and regulations exclusively to executive officers, without judicial intervention, are principles firmly established by the decisions of this court." See also *Turner* v. *Williams*, 194 U. S. 279, 290, 291; *Chin Bak Kan* v. *United States*, 186 U. S. 193, 200. In *Fok Young Yo* v. *United States*, 185 U. S. 296, 304, 305, it was held that the decision of the collector of customs on the right of transit

across the territory of the United States was conclusive, and, still more to the point, in *Lem Moon Sing* v. *United States,* 158 U. S. 538, where the petitioner for *habeas corpus* alleged facts which, if true, gave him a right to enter and remain in the country, it was held that the decision of the collector was final as to whether or not he belonged to the privileged class.

It is true that it may be argued that these cases are not directly conclusive of the point now under decision. It may be said that the parties concerned were aliens, and that although they alleged absolute rights, and facts which it was contended went to the jurisdiction of the officer making the decision, still their rights were only treaty or statutory rights, and therefore were subject to the implied qualification imposed by the later statute, which made the decision of the collector with regard to them final. The meaning of the cases and the language which we have quoted is not satisfied by so narrow an interpretation, but we do not delay upon them. They can be read.

It is established, as we have said, that the act purports to make the decision of the Department final, whatever the ground on which the right to enter the country is claimed—as well when it is citizenship as when it is domicil and the belonging to a class excepted from the exclusion acts. *United States* v. *Sing Tuck,* 194 U. S. 161, 167; *Lem Moon Sing* v. *United States,* 158 U. S. 538, 546, 547. It also is established by the former case and others which it cites that the relevant portion of the act of August 18, 1894, c. 301, is not void as a whole. The statute has been upheld and enforced. But the relevant portion being a single section, accomplishing all its results by the same general words, must be valid as to all that it embraces, or altogether void. An exception of a class constitutionally exempted cannot be read into those general words merely for the purpose of saving what remains. That has been decided over and over again. *United States* v. *Reese,* 92 U. S. 214, 221; *Trade-Mark Cases,* 100 U. S. 82, 98, 99; *Allen* v.

*Louisiana,* 103 U. S. 80, 84; *United States* v. *Harris,* 106 U. S. 629, 641, 642; *Virginia Coupon Cases,* 114 U. S. 269, 305; *Baldwin* v. *Franks,* 120 U. S. 678, 685–689; *Smiley* v. *Kansas,* 196 U. S. 447, 455. It necessarily follows that when such words are sustained they are sustained to their full extent.

In view of the cases which we have cited it seems no longer open to discuss the question propounded as a new one. Therefore we do not analyze the nature of the right of a person presenting himself at the frontier for admission. *In re Ross,* 140 U. S. 453, 464. But it is not improper to add a few words. The petitioner, although physically within our boundaries, is to be regarded as if he had been stopped at the limit of our jurisdiction and kept there while his right to enter was under debate. If, for the purpose of argument, we assume that the Fifth Amendment applies to him and that to deny entrance to a citizen is to deprive him of liberty, we nevertheless are of opinion that with regard to him due process of law does not require a judicial trial. That is the result of the cases which we have cited and the almost necessary result of the power of Congress to pass exclusion laws. That the decision may be entrusted to an executive officer and that his decision is due process of law was affirmed and explained in *Nishimura Ekiu* v. *United States,* 142 U. S. 651, 660, and in *Fong Yue Ting* v. *United States,* 149 U. S. 698, 713, before the authorities to which we already have referred. It is unnecessary to repeat the often quoted remarks of Mr. Justice Curtis, speaking for the whole court in *Murray's Lessee* v. *Hoboken Land & Improvement Co.,* 18 How. 272, 280, to show that the requirement of a judicial trial does not prevail in every case. *Lem Moon Sing* v. *United States,* 158 U. S. 538, 546, 547; *Japanese Immigrant Case,* 189 U. S. 86, 100; *Public Clearing House* v. *Coyne,* 194 U. S. 497, 508, 509.

We are of opinion that the first question should be answered, no; that the third question should be answered, yes, with the result that the second question should be answered

that the writ should be dismissed, as it should have been dismissed in this case.

*It will be so certified.*

MR. JUSTICE BREWER, with whom MR. JUSTICE PECKHAM concurred, dissenting.

I am unable to concur in the views expressed in the foregoing opinion, and, believing the matter of most profound importance, I give my reasons therefor.

Ju Toy presented his petition to the United States District Court at San Francisco, alleging that he was a native-born citizen of the United States; that he was a resident of the United States, temporarily absent and returning to the city and State in which he was born; that the collector of the port of San Francisco refused to permit him to land, and that he was detained by the general manager of the steamship company in whose vessel he came to San Francisco for return to China. A writ of *habeas corpus* was issued, and thereupon the District Attorney, in behalf of the United States, answered, setting up the application for landing, a hearing and denial thereof by the immigration officer, an appeal to the Secretary of Commerce and Labor, and his action approving that of the immigration officer, and with the answer exhibited a copy of all the evidence offered upon the hearing and the orders by the officer and the Secretary. Thereupon a motion was made by the District Attorney to dismiss the writ, on the ground substantially that it did not appear that the immigration officer or the Secretary of Commerce and Labor abused the discretion vested in them by law or that their action was unlawful or that any error prejudicial to the petitioner was committed. This motion to dismiss was overruled and the cause referred to a referee to take evidence. Upon the testimony taken by him the referee reported that the petitioner was born in the United States and a citizen thereof. Exceptions to this report were filed by the District

Attorney, which were overruled by the court, and thereupon judgment was entered that the petitioner was illegally restrained of his liberty and that he be discharged from custody. An appeal from this order was taken to the Court of Appeals for the Ninth Circuit, which court certified to us the following questions:

"First. Should a District Court of the United States grant a writ of *habeas corpus* in behalf of a person of Chinese descent being held for return to China by the steamship company which brought him therefrom, who having recently arrived at a port of the United States made application to land as a native-born citizen thereof, and who, after examination by the duly authorized immigration officers, was found by them not to have been born in the United States, was denied admission and ordered deported, which finding and action upon appeal was affirmed by the Secretary of Commerce and Labor, when the foregoing facts appear to the court and the petition for the writ alleges unlawful detention on the sole ground that petitioner does not come within the restrictions of the Chinese exclusion acts, because born in and a citizen of the United States, and does not allege or show in any other way unlawful action or abuse of their discretion or powers by the immigration officers who excluded him?

"Second. In a *habeas corpus* proceeding should a District Court of the United States dismiss the writ or should it direct a new or further hearing upon evidence to be presented where the writ had been granted in behalf of a person of Chinese descent being held by the steamship company for return to China from whence it brought him, who recently arrived from that country and asked permission to land upon the ground that he was born in and was a citizen of the United States, when the uncontradicted return and answer show that such person was granted a hearing by the proper immigration officers who found he was not born in the United States, that his application for admission was considered and denied by such officers, and that the denial was affirmed upon appeal to

the Secretary of Commerce and Labor, and where nothing more appears to show that such executive officers failed to grant a proper hearing, abused their discretion, or acted in any unlawful or improper way upon the case presented to them for determination?

"Third. In a *habeas corpus* proceeding in a District Court of the United States instituted in behalf of a person of Chinese descent being held for return to China by the steamship company which recently brought him therefrom to a port of the United States and who applied for admission therein upon the ground that he was a native-born citizen thereof, but who, after a hearing, the lawfully designated immigration officers found was not born therein and to whom they denied admission, which finding and denial, upon appeal to the Secretary of Commerce and Labor, was affirmed—should the court treat the finding and action of such executive officers upon the question of citizenship and other questions of fact as having been made by a tribunal authorized to decide the same and as final and conclusive, unless it be made affirmatively to appear that such officers, in the case submitted to them, abused the discretion vested in them or in some other way in hearing and determining the same committed prejudicial error?"

The proposition presented by these questions is that unless the petitioner for a writ of *habeas corpus* shows that the immigration officers have been guilty of unlawful action or abuse of their discretion or powers, the writ must be denied and the petitioner banished from the country. In order to see what action is lawful I refer to the rules prescribed under the authority hereinafter referred to. Rule 6 declares that "immediately upon the arrival of Chinese persons . . . it shall be the duty of the officer . . . to adopt suitable means to prevent communication with them by any persons other than the officials under his control, to have said Chinese persons examined promptly, as by law provided, touching their right to admission and to permit those proving such right to land." Rules 7, 8, 9, 10 and 21 are as follows:

"Rule 7. The examination prescribed in Rule 6 should be separate and apart from the public, in the presence of Government officials and such witness or witnesses only as the examining officer shall designate, and, if, upon the conclusion thereof, the Chinese applicant for admission is adjudged to be inadmissible, he should be advised of his right of appeal and his counsel should be permitted, after duly filing notice of appeal, to examine, but not make copies of, the evidence upon which the excluding decision is based.

"Rule 8. Every Chinese person refused admission under the provisions of the exclusion laws by the decision of the officer in charge at the port of entry must, if he shall elect to take an appeal to the Secretary, give written notice thereof to said officer within two days after such decision is rendered.

"Rule 9. Notice of appeal provided for in Rule 8 shall act as a stay upon the disposal of the Chinese person whose case is thereby affected until a final decision is rendered by the Secretary; and, within three days after the filing of such notice, unless further delay is required to investigate and report upon new evidence, the complete record of the case, together with such briefs, affidavits, and statements as are to be considered in connection therewith, shall be forwarded to the Commissioner General of Immigration by the officer in charge at the port of arrival, accompanied by his views thereon in writing; but on such appeal no evidence will be considered that has not been made the subject of investigation and report by the said officer in charge.

"Rule 10. Additional time for the preparation of cases after the expiration of three days next succeeding the filing of notice of appeal will be allowed only in those instances in which, in the judgment of said officer in charge, a literal compliance with Rule 9 would occasion injustice to the appellant or the risk of defeat of the purposes of the law, and the reasons for delay beyond the time prescribed shall in every instance be stated in writing in the papers forwarded to the Commissioner General of Immigration."

"RULE 21. The burden of proof in all cases rests upon Chinese persons claiming the right of admission to. or residence within the United States to establish such right affirmatively and satisfactorily to the appropriate Government officers, and in no case in which the law prescribes the nature of the evidence to establish such right shall other evidence be accepted in lieu thereof, and in every doubtful case the benefit of the doubt shall be given by administrative officers to the United States Government."

It will be seen that under these rules it is the duty of the immigration officer to prevent communication with the Chinese seeking to land by any one except his own officers. He is to conduct a private examination, with only the witnesses present whom he may designate. His counsel, if under the circumstances the Chinaman has been able to procure one, is permitted to look at the testimony but not to make a copy of it. He must give notice of appeal, if he wishes one, within two days, and within three days thereafter the record is to be sent to the Secretary at Washington; and every doubtful question is to be settled in favor of the Government. No provision is made for summoning witnesses from a distance or for taking depositions, and if, for instance, the person landing at San Francisco was born and brought up in Ohio, it may well be that he would be powerless to find any testimony in San Francisco to prove his citizenship. It he does not happen to have money he must go without the testimony, and when the papers are sent to Washington (three thousand miles away from the port, which in this case was the place of landing) he may not have the means of employing counsel to present his case to the Secretary. If this be not a star chamber proceeding of the most stringent sort, what more is necessary to make it one?

I do not see how any one can read those rules and hold that they constitute due process of law for the arrest and deportation of a citizen of the United States. If they do in proceedings by the United States they will also in proceedings in-

stituted by a State, and an obnoxious class may be put beyond the protection of the Constitution by ministerial officers of a State proceeding in strict accord with exactly similar rules.

It will be borne in mind that the petitioner has been judicially determined to be a free-born American citizen, and the contention of the Government, sustained by the judgment of this court, is that a citizen, guilty of no crime—for it is no crime for a citizen to come back to his native land—must by the action of a ministerial officer be punished by deportation and banishment, without trial by jury and without judicial examination.

Such a decision is to my mind appalling. By all the authorities the banishment of a citizen is punishment, and punishment of the severest kind. In *Fong Yue Ting* v. *United States*, 149 U. S. 698, it was held by a majority of the court that the removal from this country of an alien was not a punishment, Mr. Justice Gray, speaking for that majority, saying (p. 730):

"The proceeding before a United States judge, as provided for in section 6 of the act of 1892, is in no proper sense a trial and sentence for a crime or offense. It is simply the ascertainment, by appropriate and lawful means, of the fact whether the conditions exist upon which Congress has enacted that an alien of this class may remain within the country. The order of deportation is not a punishment for crime. It is not a banishment, in the sense in which that word is often applied to the expulsion of a citizen from his country by way of punishment."

But it was not suggested, and indeed could not be, that the deportation and exile of a citizen was not punishment. The forcible removal of a citizen from his country is spoken of as banishment, exile, deportation, relegation or transportation, but by whatever name called it is always considered a punishment. In Black's Law Dictionary "banishment" is defined as "a punishment inflicted upon criminals, by compelling them to quit a city, place, or country, for a specific period of time,

or for life. It is inflicted principally upon political offenders, 'transportation' being the word used to express a similar punishment of ordinary criminals." The same author defines "exile" as banishment, and "transportation" as "a species of punishment consisting in removing the criminal from his own country to another (usually a penal colony), there to remain in exile for a prescribed period." In Rapalje & Lawrence's Law Dictionary (vol. 1, page 109), "banishment" is called: "A punishment by forced exile, either for years or for life; inflicted principally upon political offenders, 'transportation' being the word used to express a similar punishment of ordinary criminals." In 4 Bl. Com. 377 it is said: "Some punishments consist in exile or banishment, by abjuration of the realm, or transportation." Vattel Book 1, Sec. 228, declares: "As a man may be deprived of any right whatsoever by way of punishment—exile, which deprives him of the right of dwelling in a certain place, may be inflicted as a punishment; banishment is always one; for, a mark of infamy cannot be set on any one, but with a view of punishing him for a fault, either real or pretended."

President Madison, in his report on the Virginia resolutions concerning the alien and sedition laws, said (4 Elliott's Debates, 455), referring to the possibilities which attend a removal from the country, "if a banishment of this sort be not a punishment, and among the severest of punishments, it will be difficult to imagine a doom to which the name can be applied."

The twelfth section of the English Habeas Corpus Act, 31 Car. II, one of the three great muniments of English liberty, enacted "that no subject of this realm, that now is or hereafter shall be an inhabitant or resident of this kingdom of England, dominion of Wales, or town of Berwick-upon-Tweed, shall or may be sent prisoner into Scotland, Ireland, Jersey, Guernsey, Tangier, or into parts, garrisons, islands, or places beyond the seas, which are or at any time hereafter shall be within or without the dominions of his majesty, his heirs or successors;

and that every such imprisonment is hereby enacted and adjudged to be illegal, . . . and the person or persons who shall knowingly frame, contrive, write, seal, or countersign any warrant for such commitment, detainer, or transportation, or shall so commit, detain, imprison, or transport any person or persons, contrary to this act, or be any ways advising, aiding, or assisting therein, being lawfully convicted thereof, shall be disabled from thenceforth to bear any office of trust or profit within the said realm of England, dominion of Wales, or town of Berwick-upon-Tweed, or any of the islands, territories, or dominions thereunto belonging; and shall incur and sustain the pains, penalties, and forfeitures limited, ordained and provided in and by the statute of provision and *praemunire,* made in the sixteenth year of King Richard II.; and be incapable of any pardon from the king, his heirs or successors, of the said forfeitures, losses, or disabilities, or any of them."

It is true in this case the petitioner was returning to San Francisco from China. Whether his absence from this country had been for a few weeks or a few years is not shown, nor does it matter. The right of a citizen is not lost by a temporary absence from his native land, and when he returns he is entitled to all the protection which he had when he left.

In *Gonzales* v. *Williams,* 192 U. S. 1, the petitioner, held in custody by the immigration officers, sued out a *habeas corpus* on the ground that she was not an alien immigrant. The Circuit Court decided against her, but on appeal we discharged her from custody, saying (p. 7):

"If she was not an alien immigrant within the intent and meaning of the act of Congress entitled 'An act in amendment of the various acts relative to immigration and the importation of aliens under contract or agreement to perform labor,' approved March 3, 1891, 26 Stat. 1084, c. 551, the commissioner had no power to detain or deport her, and the final order of the Circuit Court must be reversed."

It is true, the facts were admitted. So placing that case

alongside of this the result is that if the United States admits that the petitioner is not an alien, he is entitled to his discharge. If he proves the fact, he is not entitled, but must be deported. It was not suggested in that case that the immigration officer had been guilty of any abuse of discretion or powers, the only complaint being that he had ordered the deportation of the petitioner, who was not an alien. That same fact is alleged here, but is now adjudged insufficient to prevent the deportation. In *Gee Fook Sing* v. *United States*, 49 Fed. Rep. 146, 148, the Court of Appeals of the Ninth Circuit held:

"That any person alleging himself to be a citizen of the United States, and desiring to return to his country from a foreign land, and that he is prevented from doing so without due process of law, and who on that ground applies to any United States court for a writ of *habeas corpus*, is entitled to have a hearing and a judicial determination of the facts so alleged; and that no act of Congress can be understood or construed as a bar to such hearing and judicial determination."

See also *In re Look Tin Sing*, 21 Fed. Rep. 905; *Ex parte Chan San Hee*, 35 Fed. Rep. 354; *In re Yung Sing Hee*, 36 Fed. Rep. 437; *In re Wy Shing*, 36 Fed. Rep. 553. In the first of these cases it was said by Mr. Justice Field (p. 910):

"Being a citizen, the law could not intend that he should ever look to the government of a foreign country for permission to return to the United States, and no citizen can be excluded from this country except in punishment for crime. Exclusion for any other cause is unknown to our laws, and beyond the power of Congress."

In *Ex parte Tom Tong*, 108 U. S. 556, 559, Mr. Chief Justice Waite said:

"The writ of *habeas corpus* is the remedy which the law gives for the enforcement of the civil right of personal liberty."

In *United States* v. *Jung Ah Lung*, 124 U. S. 621, a petition for *habeas corpus* by a Chinese laborer, it was held that—

"The jurisdiction of the court was not affected by the fact that the collector had passed on the question of allowing the person to land, or by the fact that the treaty provides for diplomatic action in a case of hardship."

By the Fifth Amendment to the Constitution no person can "be deprived of life, liberty or property without due process of law." It may be true, as decided in *Murray's Lessee* v. *Hoboken Land & Improvement Company*, 18 How. 272, an action involving the validity of a distress warrant issued by the Solicitor of the Treasury, that the requirement of a judicial trial does not extend to every case, but as stated by Mr. Justice Curtis in that case (p. 284): "To avoid misconstruction upon so grave a subject, we think it proper to state that we do not consider Congress can either withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty; nor, on the other hand, can it bring under the judicial power a matter which, from its nature, is not a subject for judicial determination." And in *Hager* v. *Reclamation District*, 111 U. S. 701, 708, it was held that "undoubtedly where life and liberty are involved, due process requires that there be a regular course of judicial proceedings, which imply that the party to be affected shall have notice and an opportunity to be heard." By Article III, sec. 2 of the Constitution, "the trial of all crimes, except in cases of impeachment, shall be by jury;" and by the Fifth Amendment, "no person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury."

Summing this up, banishment is a punishment and of the severest sort. There can be no punishment except for crime. This petitioner has been guilty of no crime, and so judicially determined. Yet in defiance of this adjudication of innocence, with only an examination before a ministerial officer, he is compelled to suffer punishment as a criminal, and is denied the protection of either a grand or petit jury.

But, it is said, that he did not prove his innocence before

the ministerial officer. Can one who judicially establishes his innocence of any offense be punished for crime by the action of a ministerial officer? Can he be punished because he has failed to show to the satisfaction of that officer that he is innocent of an offense? The Constitution declares that "the privilege of the writ of *habeas corpus* shall not be suspended, unless when in cases of invasion or rebellion the public safety may require it." There is no rebellion or invasion. Can a citizen be deprived of the benefit of that so much vaunted writ of protection by the action of a ministerial officer?

By section 8 of the act of September 13, 1888, 25 Stat. 476, the act prohibiting the coming of Chinese laborers, the Secretary of the Treasury was authorized to make rules and regulations to carry into effect the provisions of the statute. This authority by subsequent legislation has been vested in the Secretary of Commerce and Labor, by whom some sixty-one rules have been announced. In the second rule it is provided that "if the Chinese person has been born in the United States, neither the immigration acts nor the Chinese-exclusion acts prohibiting persons of the Chinese race, and especially Chinese laborers, from coming into the United States apply to such person." Rule 46 reads: "The provisions of the laws regulating immigration, excluding those which prescribe payment of the head tax, apply to the residents and natives of Porto Rico and Philippine Islands, and, moreover, the provisions of the laws relating to the exclusion of Chinese apply to all such persons as are of the Chinese race, except those who are born in the United States." In other words, the department rules exclude from the jurisdiction of the immigration officers citizens of Chinese descent, and limit that jurisdiction to Chinese aliens. In *United States* v. *Wong Kim Ark*, 169 U. S. 649, it is stated (p. 653):

"It is conceded that, if he is a citizen of the United States, the acts of Congress, known as the Chinese exclusion acts, prohibiting persons of the Chinese race, and especially Chinese

laborers, from coming into the United States, do not and cannot apply to him."

By the act of August 18, 1894, 28 Stat. 372, 390, it is provided that "in every case where an alien is excluded from admission into the United States under any law or treaty now existing or hereafter made, the decision of the appropriate immigration or customs officers, if adverse to the admission of such alien, shall be final, unless reversed on appeal to the Secretary of the Treasury." The same limitation of finality to the case of aliens is repeated in the act of March 3, 1903, 32 Stat. 1213. So it appears that this court discharged from the custody of the immigration officers a person of Chinese descent on the ground that he was a citizen of the United States, doing this upon the concession of the Government that if he was a citizen the exclusion acts had no application to him; that Congress in terms makes the decision of the immigration officer final only when the party is an alien, and that the rules prescribed by the proper department exclude from the operation of the law citizens of the United States of Chinese descent. Yet, in spite of all this, it is held that this citizen of the United States must, by virtue of the ruling of a ministerial officer, be banished from the country of which he is a citizen. And this upon the ground that such officer has a right to decide whether he is or is not a citizen, and his decision on the question excludes all judicial examination.

Let us see what have been the rulings of this court in other cases, and first in respect to judicial decisions. In *Thompson* v. *Whitman,* 18 Wall. 457, Thompson, a sheriff of a county in New Jersey, was sued by Whitman for taking and carrying away a sloop, the property of the plaintiff, and justified his action by the judgment of a court, which had ordered the sloop to be sold for violating a statute of New Jersey in reference to raking and gathering clams. There was thus a judicial determination of the liability of the sloop to seizure and condemnation. Notwithstanding this judicial determination this court held that the plaintiff might show, as a matter of fact,

that the sloop was not within the limits of the State of New Jersey, and therefore was not violating its statute. In the opinion, by Mr. Justice Bradley, this quotation was made from the opinion of Chief Justice Marshall in *Rose* v. *Himely*, 4 Cranch, 269:

" 'Upon principle,' says Chief Justice Marshall, 'it would seem that the operation of every judgment must depend on the power of the court to render that judgment; or, in other words, on its jurisdiction over the subject-matter which it has determined. In some cases that jurisdiction unquestionably depends as well on the state of the thing as on the constitution of the court. If by any means whatever a prize court should be induced to condemn, as prize of war, a vessel which was never captured, it could not be contended that this condemnation operated a change of property. Upon principle, then, it would seem that, to a certain extent, the capacity of the court to act upon the thing condemned, arising from its being within, or without, their jurisdiction, as well as the constitution of the court, may be considered by that tribunal which is to decide on the effect of the sentence.' "

Rose's "Notes on United States Reports" show that a multitude of cases, both state and Federal, rely upon *Thompson* v. *Whitman* as authority. Among them is *Scott* v. *McNeal* 154 U. S. 34, in which it was held that a court of probate, having jurisdiction in the administration of deceased persons, had no jurisdiction to appoint an administrator of one who was alive, although he had been absent and not heard from for seven years, and that a sale made by the administrator appointed in such a case passed no title. It was cited approvingly in *Andrews* v. *Andrews*, 188 U. S. 14. There a decree of divorce, rendered by a South Dakota court in a case in which both parties were in court and in which the court found not only that there were sufficient grounds for divorce, but also that the plaintiff had been a *bona fide* resident of South Dakota for the statutory length of time, and therefore had the requisite status to give that court jurisdiction, could

be upset in Massachusetts by proof that the plaintiff was not
in fact a *bona fide* resident of South Dakota.   The same case
was also relied upon as authority in *Bell* v. *Bell,* 181 U. S.
175, 177, where we said:

"No valid divorce from the bond of matrimony can be
decreed on constructive service by the courts of a State in
which neither party is domiciled.   And by the law of Penn-
sylvania every petitioner for a divorce must have had a *bona
fide* residence within the State for one year next before the
filing of the petition. . . . The recital in the proceed-
ings in Pennsylvania of the facts necessary to show jurisdic-
tion may be contradicted.   *Thompson* v. *Whitman,* 18 Wall.
457."

I have always supposed that a judgment of a court of
competent jurisdiction was at least as conclusive as the find-
ing of a ministerial officer, and that the right of personal lib-
erty was as sacred in the eyes of the law as the title to a
sloop.

Turning now to the action of ministerial or administrative
officers, and what has been the uniform ruling of this court?
Take the Land Department.   Questions of fact within the
undoubted jurisdiction of that Department are considered
as settled by its rulings. - But questions of fact upon which
its jurisdiction rests are never so regarded.   Thus, whether a
tract of public land be swamp, mineral or agricultural, may
be finally determined by the Department; but whether a tract
is public land is not so determined, and in all the multitude
of cases that have been presented to this court it has never
even been suggested that a ruling of the Department that a
tract was public land was conclusive unless it appeared that
the Land Department was guilty of some abuse of its discre-
tion or powers.   The question, and the only question, has
been was the tract public land or not?   In *United States* v.
*Stone,* 2 Wall. 525, it appeared that a tract of land adjacent
to a military post had been at one time surveyed, and by that
survey was included within the military reservation.   Sub-

sequently a new survey was had, by which this tract was excluded, and thereafter it was, in due course of administration, patented. Thereupon this suit was brought to set aside the patent. It was not suggested that the Land Department had been guilty of any irregularity in administration, or had not proceeded in accordance with the established rules of procedure; yet the court unanimously held that the patent must be set aside, on the ground that the land was reserved to the United States as a part of the military reservation by the original survey. In *Smelting Company* v. *Kemp*, 104 U. S. 636, 641, we said:

"Of course, when we speak of the conclusive presumptions attending a patent for lands, we assume that it was issued in a case where the Department had jurisdiction to act and execute it; that is to say, in a case where the lands belonged to the United States, and provision had been made by law for their sale. If they never were public property, or had previously been disposed of, or if Congress had made no provision for their sale, or had reserved them, the Department would have no jurisdiction to transfer them, and its attempted conveyance of them would be inoperative and void, no matter with what seeming regularity the forms of law may have been observed. The action of the Department would in that event be like that of any other special tribunal not having jurisdiction of a case which it had assumed to decide."

It would be an affectation to attempt to cite all the authorities in which this doctrine is announced. In *Doolan* v. *Carr*, 125 U. S. 618, decided in 1887, Mr. Justice Miller cites more than a dozen cases as directly in point. Since then the doctrine has been again and again restated.

Take also the matter of imports. The Secretary of the Treasury is charged with the collection of the duties on them, but has it ever been held or even suggested that a ruling of the custom house officers, approved by the Secretary of the Treasury, is a final determination that the article so passed upon was subject to duty and precluded the courts from inquiring

as to that fact? Certainly this court has wasted a great deal of time determining whether a given article was subject to duty or not if the decision of the custom house officers, approved by the Secretary of the Treasury, was a final decision of the question.

But it is said that the exclusion acts speak of Chinese persons, and that such term includes citizens as well as aliens, and, therefore, Congress has given power to the immigration officers to banish citizens of the United States if they happen to be of Chinese descent. But obviously the statutes refer to citizens of China and not to citizens of the United States. The treaty of 1894, 28 Stat. 1210, in execution of which most of these statutes were passed, speaks on the one hand of Chinese subjects in the United States and on the other of citizens of the United States in China. The treaty declared the rights and burdens of Chinese citizens in the United States, as well as the rights and burdens of citizens of the United States in China. The treaty then placing Chinese subjects over against American citizens must have had in mind citizenship and not race. The legislation carrying that treaty into effect must be interpreted in the light of that fact. The statutes of the United States expressly limit the finality of the determination of the immigration officers to the case of aliens. It has been conceded by the Government that these statutes do not apply to citizens, and this court made a most important decision based upon that concession. The rules of the Department declare that the statutes do not apply to citizens, and yet in the face of all this we are told that they may be enforced against citizens, and that Congress so intended. Banishment of a citizen not merely removes him from the limits of his native land, but puts him beyond the reach of any of the protecting clauses of the Constitution. In other words, it strips him of all the rights which are given to a citizen. I cannot believe that Congress intended to provide that a citizen, simply because he belongs to an obnoxious race, can be deprived of all the liberty and protection which the Constitution

guarantees, and if it did so intend, I do not believe that it has the power to do so.

MR. JUSTICE PECKHAM concurred in the foregoing dissent.

MR. JUSTICE DAY also dissented.