### Ex parte JONG JIM HONG.

(Circuit Court, N. D. New York. December 9, 1907.)

1. ALIENS—CHINESE EXCLUSION ACT—CONCLUSIVENESS OF DECISION OF EXECUTIVE DEPARTMENT.

Whether a Chinese person, claiming the right to enter the United States on the ground that he is a citizen by birth, has such right, is a question of fact, on which the decision of the immigration officer, affirmed on appeal to the Secretary of Commerce and Labor, if fairly made, is conclusive, and can only be reviewed by a court on a writ of habeas corpus for abuse of discretion.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 2, Aliens, § 95.

Citizenship of the Chinese, see notes to Gee Fook Sing v. United States, 1 C. C. A. 212; Lee Sing Far v. Same, 35 C. C. A. 332.]

2. SAME—DETENTION PENDING DECISION ON APPLICATION TO ENTER.

The detention of a Chinese person in a place provided within the United States pending final determination of his application to enter is legal.

On Application for Writ of Habeas Corpus.

The petitioner, Jong Jim Hong, a Chinese person, seeks his discharge from imprisonment or detention at the Detention House at Malone, N. Y., having applied for and been refused admission into the

United States; his detention being for the purpose of returning him to China, whence he came. He claims that he was born in the United States, and that he is a citizen thereof, and as such entitled to enter.

R. M. Moore, for petitioner.
H. E. Owen, for the United States.

RAY, District Judge. The petition for the writ of habeas corpus alleges that the relator, Jong Jim Hong, is a Chinese person, born in the United States of America, and that he is restrained of his liberty and detained by H. R. Sisson, Chinese inspector of the United States, at Malone, N. Y., in what is known as the "Detention House," an establishment jointly maintained by the United States government and the Canadian Pacific Railroad Company, a foreign railroad corporation, and that the detention is illegal and without any authority of law whatever.

The return of the Chinese inspector to the writ shows: (1) That he, as such inspector, has charge of the detention quarters at Malone, N. Y., where all Chinese persons, aliens, are detained pending inquiry and determination of the question of their right to enter the United States. (2) That before the issuing of the writ herein, and on the 23d day of September, 1907, the said Jong Jim Hong made application to the immigration officer of the United States located at Malone, N. Y., for admission and entry into the United States; he being a Chinese person and having immediately come from the Chinese Empire, by way of Vancouver, over the Canadian Pacific Railroad. Such application was made at the border between the United States and the Dominion of Canada, and for the purpose of convenience, pending inquiry into the right of the applicant to be admitted into the United States, he was taken to said detention quarters at Malone, N. Y.; that being a port of entry for Chinese immigrants designated by the Secretary of the Treasury of the United States pursuant to law. (3) Said Jong Jim Hong presented himself in person at said Detention House on said day and made application to enter the United States, and on the next day, September 24, 1907, he was given an opportunity by said immigration officer in charge of said port of entry, duly appointed under the act of Congress entitled "An act to establish the Department of Commerce and Labor," approved February 14, 1903 (Act Feb. 14, 1903, c. 552, 32 Stat. 825 [U. S. Comp. St. Supp. 1907, p. 84]), to make such voluntary statements as he might desire relative to his right to be admitted into the United States, and was also informed that he might produce any witnesses by whom he could establish his right to enter, and full opportunity was given said applicant for admission to make statements and to produce witnesses and establish his right to enter. On that day said relator, Jong Jim Hong, was sworn and examined as a witness in his own behalf, and on the 1st day of October, 1907, one Moy Soon, a Chinese person, was also produced and sworn as a witness in behalf of said application. Affidavits of Moy Soon, sworn to August 4, 1906, Jong Jim Hong, sworn to May 3, 1898, and of John Taylor, sworn to May 3, 1898, were also submitted. All evidence submitted or offered having been considered by said immigration officer on

the 14th day of October, 1907, it was adjudged and determined by him that said applicant, Jong Jim Hong, was an alien Chinese person, and not entitled to enter and remain in the United States. . (4) A copy of said decision was served on said applicant on the said 15th day of October, 1907, who thereupon took an appeal therefrom to the Secretary of the Department of Commerce and Labor. (5) Thereafter, and on the 28th day of October, 1907, the Secretary of Commerce and Labor, having considered same, dismissed such appeal and affirmed the decision of the immigration officer. The return of the writ also denies that the petitioner, Jong Jim Hong, is a citizen of the United States, and alleges that he is an alien Chinese laborer and not entitled to enter, be, or remain in the United States of America, and that his holding and detention is under and by virtue of the laws and authority of the United States of America, and lawful. All the evidence taken and copies of the decisions referred to are attached to and made a part of the return.

There is no claim or pretense of any irregularity in the proceedings. Having exhausted his remedy by appeal to the Department of Commerce and Labor, and having met with an adverse decision which in effect declares that said Jong Jim Hong is a Chinese person, which is admitted, and that he is an alien—that is, was not born within the United States—which is denied, and is a laborer and not of a class entitled to enter, remain, or be within the United States, which is admitted unless he was born within the United States, the petitioner now appeals to the Circuit Court of the United States on the record and asks his discharge from detention on the claim that the record shows that he is a citizen of the United States and as such is entitled to enter and remain in the United States as such citizen. His claim is that the determination of the immigration officer, affirmed by the Department of Commerce and Labor, is not final and conclusive, but that he is entitled to a review or reconsideration of the question, on the record made, by the courts of the United States. The Supreme Court of the United States has settled the proposition that a Chinese person born in the United States (unless under circumstances and conditions not existing in this case) is a citizen thereof. U. S. v. Wong Kim Ark, 169 U. S. 653, 18 Sup. Ct. 456, 42 L. Ed. 890. If a citizen, he is, of course, entitled to be and remain in the United States, and to go to China and return to the United States and enter. His right depends, not on any question of law, but on the existence of a fact: Was he born in the United States?

Congress has said that this question of fact shall be determined in the first instance by the immigration officer, and then by the department of Commerce and Labor if an appeal is taken. It has also said that this decision shall be final. In Re Sing Tuck (C. C. N. D. N. Y.) 126 Fed. 386, this court held that, when the Chinese person did not take an appeal, that question of fact being the only question involved, the decision of the immigration inspector was final and conclusive. The Circuit Court of Appeals reversed the decision (Sing Tuck et al. v. United States, 128 Fed. 592, 63 C. C. A. 199) and held:

"Where an alleged Chinese alien, apprehended in deportation proceedings, establishes a prima facie case of citizenship, he is entitled to have the legality

157 F.—29

of his detention judicially determined on habeas corpus, notwithstanding Act Cong. Aug. 18, 1894, c. 301, § 1, 28 Stat. 390 (U. S. Comp. St. 1901, p. 1303), declares that the determination of the immigration officers shall be final, unless reversed on appeal to the Secretary of the Treasury."

In that case the petitioner for the writ had not taken an appeal to the Department of Commerce and Labor. But the Supreme Court of the United States reversed the Circuit Court of Appeals and affirmed the Circuit Court (United States v. Sing Tuck et al., 194 U. S. 161, 24 Sup. Ct. 621, 48 L. Ed. 917), without deciding, however, whether or not such decision of the immigration officer is final, holding that, as no appeal had been taken and no evidence of citizenship given by the applicant for admission, he was not entitled to the writ.

Later the question came up again in a case when a decision of the question was forced upon the court. United States v. Ju Toy, 198 U. S. 253, 25 Sup. Ct. 644, 49 L. Ed. 1040. The court held:

"Even though the fifth amendment does apply to one seeking entrance to this country, and to deny him admission may deprive him of liberty, due process of law does not necessarily require a judicial trial, and Congress may intrust the decision of his right to enter to an executive officer. Under the Chinese exclusion and the immigration laws, where a person of Chinese descent asks admission to the United States, claiming that he is a native-born citizen thereof, and the lawfully designated officers find that he is not, and upon appeal that finding is approved by the Secretary of Commerce and Labor, and it does not appear that there was any abuse of discretion, such finding and action of the executive officers should be treated by the courts as having been made by a competent tribunal, with due process of law, and as final and conclusive; and in habeas corpus proceedings, commenced thereafter, and based solely on the ground of the applicant's alleged citizenship, the court should dismiss the writ, and not direct new and further evidence as to the question of citizenship. A person whose right to enter the United States is questioned under the immigration laws is to be regarded as if he had stopped at the limit of its jurisdiction, although physically he may be within its boundaries."

Three questions were certified to that court, viz.:

"First. Should a District Court of the United States grant a writ of habeas corpus in behalf of a person of Chinese descent being held for return to China by the steamship company which brought him therefrom, who, having recently arrived at a port of the United States, made application to land as a native-born citizen thereof, and who, after examination by the duly authorized immigration officers, was found by them not to have been born in the United States, was denied admission, and ordered deported, which finding and action upon appeal was affirmed by the Secretary of Commerce and Labor, when the foregoing facts appear to the court and the petition for the writ alleges unlawful detention on the sole ground that petitioner does not come within the restrictions of the Chinese exclusion acts, because born in and a citizen of the United States, and does not allege or show in any other way unlawful action or abuse of their discretion or powers by the immigration officers who excluded him?

"Second. In a habeas corpus proceeding, should a District Court of the United States dismiss the writ, or should it direct a new or further hearing upon evidence to be presented where the writ had been granted in behalf of a person of Chinese descent being held by the steamship company for return to China, from whence it brought him, who recently arrived from that country and asked permission to land upon the ground that he was born in and was a citizen of the United States, when the uncontradicted return and answer show that such person was granted a hearing by the proper immigration officers, who found that he was not born in the United States, that his application for admission was considered and denied by such officers, and that

the denial was affirmed upon appeal to the Secretary of Commerce and Labor, and where nothing more appears to show that such executive officers failed to grant a proper hearing, abused their discretion, or acted in any unlawful or improper way upon the case presented to them for determination?

"Third. In a habeas corpus proceeding in a District Court of the United States, instituted in behalf of a person of Chinese descent being held for return to China by the steamship company which recently brought him therefrom to a port of the United States, and who applied for admission therein upon the ground that he was a native-born citizen thereof, but who, after a hearing, the lawfully designated immigration officers found was not born therein and to whom they denied admission, which finding and denial, upon appeal to the Secretary of Commerce and Labor, was affirmed, should the court treat the finding and action of such executive officers upon the question of citizenship and other questions of fact as having been made by a tribunal authorized to decide the same, and as final and conclusive, unless it be made affirmatively to appear that such officers, in the case submitted to them, abused the discretion vested in them, or in some other way, in hearing and determining the same, committed prejudicial error?"

After full consideration these questions were answered as follows: The first, "No;" the third, "Yes;" and the second, that "the writ should be dismissed." The court, among other things, said:

"It is established, as we have said, that the act purports to make the decision of the department final, whatever the ground on which the right to enter the country is claimed—as well when it is citizenship, as when it is domicile and the belonging to a class excepted from the exclusion acts. United States v. Sing Tuck, 194 U. S. 161, 167, 24 Sup. Ct. 621, 48 L. Ed. 917; Lem Moon Sing v. United States, 158 U. S. 538, 546, 547, 15 Sup. Ct. 967, 39 L. Ed. 1082. It also is established by the former case and others which it cites that the relevant portion of Act August 18, 1894, c. 301, 28 Stat. 390 [U. S. Comp. St. 1901, p. 1303], is not void as a whole. The statute has been upheld and enforced. But the relevant portion being a single section, accomplishing all its results by the same general words, must be valid as to all that it embraces, or altogether void. In view of the cases which we have cited, it seems no longer open to discuss the question propounded as a new one. Therefore we do not analyze the nature of the right of a person presenting himself at the frontier for admission. In re Ross, 140 U. S. 453, 464, 11 Sup. Ct. 897, 35 L. Ed. 581. But it is not improper to add a few words. The petitioner, although physically within our boundaries, is to be regarded as if he had been stopped at the limit of our jurisdiction and kept there while his right to enter was under debate. If, for the purpose of argument, we assume that the fifth amendment applies to him, and that to deny entrance to a citizen is to deprive him of liberty, we nevertheless are of opinion that with regard to him due process of law does not require a judicial trial. That is the result of the cases which we have cited and the almost necessary result of the power of Congress to pass exclusion laws. That the decision may be intrusted to an executive officer and that his decision is due process of law was affirmed and explained in Nishimura Ekiu v. United States, 142 U. S. 651, 660, 12 Sup. Ct. 336, 35 L. Ed. 1146, and in Fong Yue Ting v. United States, 149 U. S. 698, 713, 13 Sup. Ct. 1016, 37 L. Ed. 905, before the authorities to which we have already referred. It is unnecessary to repeat the often-quoted remarks of Mr. Justice Curtis, speaking for the whole court in Murray's Lessee v. Hoboken Land & Improvement Co., 18 How. 272, 280, 15 L. Ed. 372, to show that the requirement of a judicial trial does not prevail in every case. Lem Moon Sing v. United States, 158 U. S. 538, 546, 547, 15 Sup. Ct. 967, 39 L. Ed. 1082; Japanese Immigrant Case, 189 U. S. 86, 100, 23 Sup. Ct. 611, 47 L. Ed. 721; Public Clearing House v. Coyne, 194 U. S. 497, 508, 509, 24 Sup. Ct. 789, 48 L. Ed. 1092."

I do not see why that case is not decisive of the case now before the court. The petitioner, Jong Jim Hong, neither alleges or shows any unlawful action, or abuse of their discretion or powers, by the immigration officers who excluded him, unless it was in deciding, on the

evidence presented, that said Jong Jim Hong was not born in the United States. No prejudicial error in receiving or rejecting evidence is claimed. There is no pretense he was not given a full and fair opportunity to present his case and all his evidence. I will assume that under the decision in United States v. Ju Toy, supra, this court is to look to the evidence and determine whether or not the action of the immigration officers, and of the Secretary of Commerce and Labor in affirming his action, was arbitrary and unwarranted—whether the evidence was so conclusive as to require this court to say that it was an abuse of their powers to hold that Jong Jim Hong was not born in the United States. The affidavit of Jong Jim Hong, made May 3, 1898, gives his height and weight, has his alleged photograph attached, and says that he was born in San Francisco, Cal., on the 19th day of November, 1878, of Chinese parents, and that he resided continuously in San Francisco until 1896, a period of 18 years, when he came to Boston, Mass., when he was residing at No. 3 Oxford street. The photograph is stamped by E. G. Sperry, Chinese inspector, showing that said Jong Jim Hong, departed from Malone, N. Y., August 8, 1906. The affidavit of Moy Soon, sworn to August 4, 1906, states that he resides at Washington, D. C.; that he is well acquainted with said Jong Jim Hong, whose photograph is attached to said affidavit of Jong Jim Hong, which is attached to that of Moy Soon, and has known him ever since his birth; that said Jong Jim Hong was born at No. 729 Commercial street, San Francisco, Cal., in 1878, and that at the time of his birth said Moy Soon resided at San Francisco, and continued to reside there for 10 years thereafter; that during all of said 10 years he was well acquainted with said Jong Jim Hong and his father, Jung Tung Shin; that the father died in China about 17 years prior to August 4, 1906. The affidavit of John Taylor, sworn to May 3, 1898, states that he formerly lived in San Francisco, Cal.; that he was "well acquainted with Jong Jim Hong, whose declaration and photograph accompany these presents; and that to my knowledge the facts therein stated in relation to his birth in San Francisco are true." He also says the photograph attached thereto "is a correct likeness of the said Jong Jim Hong."

If these affiants were credible persons, knew whereof they spoke, and testified truthfully, a case was made, of course. But Jong Jim Hong, the applicant for admission, was sworn before the inspector, Harry R. Sisson, and Moy Soon was examined before Inspector Walter L. Pydike at Washington, D. C., October 1, 1907, and his testimony reduced to writing and produced before Inspector Sisson. Search was made for said John Taylor, and the information was that he returned to China about 1902 and died there about 1903. Turning to the testimony of Jong Jim Hong, we find that he says he is 38 years old, and was born at 729 Commercial street, San Francisco, January 1, 1869, and lived there at that number and street 20 years, when he went to No. 3 Oxford street, Boston, Mass., where he remained about 10 years, working in restaurants and laundries, when he went to Washington, D. C., and was at 506 G street for about 4 years, when he went to China, August 8, 1906, on a visit; had the photograph and affidavits made before going, because he was informed by John Taylor it would

be better to have something of the kind; says that his uncle, brother of his father, Jong Tuen Hong, accompanied him from San Francisco to Boston, and that he returned to China and died about 10 years ago; that he was never in China until 1906, and had no friends, acquaintances, or relatives there, never having had any brothers or sisters, and his father and only uncle having died some considerable time before. He says that his father died in China 20 years ago and that his mother died there 17 or 18 years ago. He says that he knew John Taylor at 3 Oxford street, Boston, Mass., and knew him first when he went to Boston, never before; never saw him in San Francisco; says Taylor spoke to him and said he knew his father and knew he was born in San Francisco. He says that Moy Soon is a friend, but that he never knew him personally until he (Jong Jim Hong) went to Washington, and never saw him in San Francisco, and never talked with him as to his (Jong Jim Hong's) birth in San Francisco; but then he contradicts this last statement, and says Moy Soon left San Francisco when he (Jong Jim Hong) was too young to remember him. Moy Soon, who made the affidavit referred to, says on oath that he has known Jong Jim Hong 7 or 8 years in Washington, and saw him there for the first time and he was then over 20 years old. In answer to the question, "Where was this man, Jim Hong, born?" he said, "I do not know where he was born, but his father told me he was born in San Francisco"; that his father just told him he had a son who was born in San Francisco; that he never saw Jong Jim Hong in San Francisco; and that the father did not even tell him Jim Hong was born at 729 Commercial avenue; says he did not know the mother. Jong Jim Hong, when questioned as to San Francisco, where he says he lived until he was 20 years of age, showed such ignorance of that city as to demonstrate his story as to living there until he was 20 years of age is not true. It is evident he knows nothing of the place of his birth, except by hearsay. It is also evident that Moy Soon knows nothing as to the place of Jong Jim Hong's birth, and that his affidavit made in August, 1906, was untrue. Taylor's affidavit was evidently of the same character. It proves nothing either way. He gives no facts, no particulars, and the petitioner says in substance and effect that Taylor could not have known him in San Francisco, especially his place of birth.

Without going further into an analysis of the evidence, I am fully satisfied that the petitioner, Jong Jim Hong, failed to show that he was born in the United States, and that the decisions of the immigration inspector and of the Department of Commerce and Labor on appeal were correct and fair. The credibility of Jong Jim Hong and of Moy Soon, and the force and effect of their testimony, in view of the contradictions, want of recollection, and hearsay character of much of it, were for the immigration officer, especially that of Jong Jim Hong, who was personally before that officer. This court concurs fully in the conclusion reached by him. A proper hearing was granted, discretion was not abused, and there was no unlawful or improper action on the case presented. The detention of the petitioner, Jong Jim Hong, at the Detention House in Malone, pending a final determination of his application to enter the United States, was clearly legal.

United States v. Ju Toy, 198 U. S. 253, 263, 25 Sup. Ct. 644, 49 L. Ed. 1040; United States v. Sing Tuck et al., 194 U. S. 161, 24 Sup. Ct. 621, 48 L. Ed. 917. In both these cases the applicants for the writ were detained, as here, pending the final determination of their application. In U. S. v. Ju Toy, supra, the court said:

"The petitioner, although physically within our boundaries, is to be regarded as if he had been stopped at the limit of our jurisdiction and kept there while his right to enter was under debate."

Nothing in the record can sustain the allowance of the writ, and it must be dismissed.

---

## THE SIF.

### (District Court, S. D. New York. October 18, 1907.)

COLLISION—STEAMER AND SAILING VESSEL CROSSING—NAVIGATING IN FOG.

A collision occurred near the Sandy Hook Lightship in a dense fog between a schooner and a steamship on crossing courses. The schooner was sailing on the port tack at a speed of five or six knots and sounding proper fog signals. These were not heard by those on the steamer until immediately before the collision, and were then understood as being one blast, instead of two; but the steamer at once reversed. *Held,* that she was in fault for not hearing and understanding them before, it being shown that the horn was new and of proper kind; and *held,* also, that the schooner was also in fault for going at excessive speed in the fog.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Collision, §§ 52, 152–176.

Collision rules, speed of sailing vessels in fog, see note to The Mount Hope, 29 C. C. A. 368.]

In Admiralty. Suit for collision.

Peter S. Carter, for libellants.

Butler, Notman & Mynderse, for claimant.