## *In re* AH QUAN.

*(Circuit Court, D. California.* August 7, 1884.)

1. CHINESE RESTRICTION ACTS — CERTIFICATE OF COLLECTOR OF PORT — EVIDENCE.

    With reference to Chinese laborers re-entering the United States after having once left, congress did not intend, in the amendatory act of July 5, 1884, that the certificate of the collector of the port, required by section 4 of the original statute, should be produced by such Chinamen as had departed from the United States before it would have been possible to obtain the certificate from the collector. The presentation of such a certificate gives the Chinese a *prima facie* privilege to return, but the privilege may rest upon evidence other than the certificate, bearing upon the facts it would have proved.

2. SAME — CHINESE, OTHER THAN LABORERS, EN ROUTE TO UNITED STATES ON JULY 5, 1884.

    Chinese, other than Chinese laborers entitled under the treaty with China, and not prohibited from entering the United States by the restriction acts, who left China or other foreign country before July 5, 1884, on their way to enter the United States, are now entitled to enter, upon such satisfactory evidence as was recognized as competent and sufficient before the amendatory act of July 4, 1884.

3. SAME—CERTIFICATE—GOOD ONLY TO ADMIT INDIVIDUAL DESCRIBED IN IT.

    The certificate required of returning Chinese cannot entitle the wife or children of the holder to enter with him. There must be either an independent certificate for each, or else the certificate issued to the husband or father must contain also a certificate of the facts required, both as to the wife and each minor child sought to be introduced.

On *Habeas Corpus.*

*S. G. Hilborn,* U. S. Atty., for the United States.

*T. D. Riordon, E. D. Wheeler, Harvey Brown,* and *L. J. Mowry,* for petitioner.

Before SAWYER and HOFFMAN, JJ.

SAWYER, J. Upon careful consideration of the act approved July 5, 1884, to amend an act entitled "An act to execute certain treaty stipulations relating to Chinese," etc., we hold and we have determined, in passing upon the right of Chinese to enter the United States, to be governed by the rules as stated in the following propositions:

1. Chinese laborers who were in the United States on the seventeenth day of November, 1880, and who departed from the United States prior to June 6, 1882, before the collector of the port was prepared to give the certificate required by section 4 of the original act, are entitled to re-enter the United States on satisfactory evidence, other than the certificate prescribed in said section 4, that they resided in the United States on November 17, 1880, or came into the United States between that date and August 4, 1882. There is nothing in the amendatory act on this point that requires a construction more unfavorable to Chinese laborers than that given by us in *Leong Yick Dew,* 19 FED. REP. 490, to the original act. Dropping the word "and," after the clause in section 3 in the original act, "the two foregoing sections shall not apply to Chinese laborers who were in the United States on the seventeenth day of November, 1880," etc., and substituting therefor in the amendatory act, "*nor shall said sections apply* to Chinese laborers who shall produce to said master, etc., * * * the evidence hereinafter in this act required of his being one of the laborers in this section mentioned," makes two classes—the general class, embracing all who were in the United States between the two dates, and the sub-class, being those of that class who could obtain the certificate provided for in the next following section 4. This change renders the propriety of our construction of the origginal act still more apparent, and seems intended to affirm it. Section 4 only applies, and in the nature of things *can only apply,* to those Chinese laborers in the country at the dates mentioned, who departed from the country after the passage of the act; for as to those who had already departed it was impossible for the collector to go on board of the vessel *before their departure* and make the prescribed list, or deliver the prescribed certificate. The last clause of section 4, making the prescribed certificate "the only evidence permissible to establish a right of re-entry," has reference alone to those Chinese laborers provided for in the first part of the same section, and in the nature of things could only refer to that class, for as to no other could the collector possibly go aboard the vessel before her departure and make the list and issue the certificate. The act certainly did not contemplate that the collector should perform these acts upon vessels and in regard to Chinese laborers already gone. The lan-

guage is, "the *said* certificate shall be the only evidence," etc.   What is the "*said* certificate?"   Clearly, the certificate which the collector is to issue to the departing laborer, in pursuance of the provisions of the first clause of the section, *upon going* aboard the vessel and making the required list *before her departure*.   It could be no other.   No other certificate is provided for, and this could not be done, and congress did not do, or intend to do, so unreasonable a thing as to give a right to a certificate, and impose the correlative duty to produce it, as to persons who had already departed before the passage of the act, and could not obtain it.   The act imposes a duty and obligation on the government, through the collector, correlative and precedent to the obligation imposed on the Chinese laborer to produce the prescribed certificate, and the obligation of the latter to produce the certificate necessarily arises subsequently to, and is dependent upon, the performance of the correlative and precedent duty and obligation on the part of the government to furnish it.   To hold that congress intended to require the performance of the dependent obligation on the part of the Chinese laborer until the government has discharged its correlative and precedent duty and obligation upon which his obligation rests, imposed by the act, by furnishing the certificate and thereby rendering it possible for him to produce it, would be to attribute to congress a deliberate intent to enact a palpable and glaring absurdity, thereby violating one of the most venerable canons of statutory construction, that a statute must not be so construed as to lead to an absurd conclusion.   We must conclude, therefore, that it was not intended to require the production of the certificate by those who departed from the country before it was possible to obtain it.   And that congress did not intend to exclude such Chinese laborers as were in the country at the time mentioned is clearly manifest, because it has said so in express terms in the provision of section 3, "that the two foregoing sections [excluding Chinese laborers] shall not apply to Chinese laborers who were in the United States on the seventeenth day of November, 1880," etc.   It is clear, from the necessities of the case, that this section is only applicable to those who departed after the passage of the act, and who had the opportunity to procure the certificate.   To hold otherwise would be to render this clause, making the impossible certificate the only evidence as to those who had departed before the passage of the act, absolutely inconsistent with the clause of section 3 referred to, that the preceding sections "shall not apply to Chinese laborers who were in the United States" at the designated period, and render that provision wholly nugatory, as well as to violate the treaty which the act professes to execute and not to abrogate.   The different provisions of the statute must be so construed, if possible, that they can stand together, and not so as to nullify each other.

The clause of the amendment making the certificate the only evidence as to those to whom it is applicable of a right to re-enter the

United States, only declares in express and explicit terms what we held the original act to mean, and in no way changes its effect, in this particular, as we had construed it. Our construction of the original act in *Leong Yick Dew*, 19 FED. REP. 491, was before congress at the time of the passage of the amendatory act. If it had been intended to make the amendment as to the prescribed certificate being the only evidence of a right to return applicable to those Chinese laborers who were in the country at the date of the treaty, and who departed after that date and before it was possible to obtain the certificate required, as to whom *we had before distinctly held it to be* inapplicable, congress would certainly have amended the first clause of section 3 so as to read, in substance, as follows:

"The two preceding sections shall not apply to Chinese laborers who were in the United States on the seventeenth day of November, 1880," etc., "*except as to those who departed from the United States after said seventeenth day of November*, 1880, *and before the passage of the act, or before it was possible to obtain such certificate.*"

This is, in effect, the way those who insist upon the production of such certificate by that class, as the only evidence of their right to re-enter the United States, must read it in order to sustain their view. Congress has not introduced any such exception, and we are not authorized to interpolate it into the act. To do so would be to legislate, not to construe. The action of congress in not introducing any exception of the kind indicated, in view of our well-known previous construction of the original act on this very point, is, in effect, an emphatic approval of that construction.

The requirements of the certificate have, it is true, been enlarged, but this in no way affects the act in this respect as construed by us upon any disputed point of construction. We are entirely satisfied with the decision in the case cited, and adhere to it, and apply it to the amended act, to which it is as clearly applicable as to the original, and, we think, more clearly so.

The United States attorney insists that it ought now to be conclusively presumed that all Chinese laborers who departed between the dates named have already returned. Congress has not provided that there shall be any such presumption, conclusive or otherwise, and we are not authorized to legislate or incorporate any such presumption into the act.

2. The only evidence upon which Chinese laborers who departed from the United States after June 6, 1882, can now be admitted, is a certificate containing all the essential matters required by section 4 of the original act, or the certificate provided for in the amendatory act; and Chinese laborers who departed from the United States prior to July 5, 1884, or before the collector was prepared to issue certificates under the latter act, having such a certificate regularly issued under the act of 1882, and who produce it to the collector on their

return, are *prima facie* entitled to re-enter the United States, although they do not arrive till after July 5, 1884.

3. Chinese laborers who have departed from the United States since the collector has been prepared and ready to furnish the certificates required by section 4 of the restriction act, as amended by the said act of July 5, 1884, can only re-enter the United States upon the production of the certificate required by said amendment, which is the only evidence to show a *prima facie* right, in such cases, to re-enter the United States. Should the United States produce evidence to overthrow such *prima facie* evidence of a right to re-enter the United States, the party claiming the right to re-enter may rebut such evidence produced by the United States, by any evidence generally competent under the ordinary rules of evidence.

4. Chinese other than Chinese laborers, entitled, under the treaty with China, and not prohibited from entering the United States by the said restriction acts, who left China or other foreign country before July 5, 1884, on their way to enter the United States, are now entitled to enter upon such satisfactory evidence as was recognized as competent and sufficient before the passage of said amendatory act of July 5, 1884.

5. The wife or minor child of a man of the Chinese race entitled to come to the United States, other than a Chinese laborer, is a "Chinese person," within the meaning of said original and amendatory restriction acts, and entitled to enter upon the production of the required certificate, but not otherwise, under the provisions of the said amendatory act. They cannot, nor can either of them, enter upon the certificate issued to the husband or father alone, not embracing the required description and name of the wife or child. There must be either an independent certificate, such as required, or the certificate issued to the husband or father must also contain a certificate of the facts required by the statute, both as to the wife and as to each minor child sought to be introduced. But the wife and minor children, who have not, in fact, adopted the occupation of a laborer, of a Chinese man, should be deemed to belong to the class to which the husband or father belongs.

I will say in regard to the last proposition that the amendatory act says: "Every Chinese person other than a laborer  *   *   *" shall procure the prescribed certificate. It does not say every Chinese person except the wife or child of one having a certificate; and we are satisfied that the provision embraces every Chinese individual. Webster defines a "person" to be an individual of the human race, and includes men, women, and children. Bouvier's Law Dictionary also defines the word "person" as including men, women, and children. "Every Chinese person" is a term of broad significance, and manifestly includes all, as used in this act of congress. We are unable to give it any other construction. - We are not authorized to

introduce a provision like this: every Chinese person "except the wife and child of a Chinese man presenting the required certificate." That would, also, be legislating, rather than construing. We do not perceive that it would make any great difference, when the construction becomes known, and it is the natural construction which any one would put on the act. The husband, when he obtains a certificate for himself, can as readily obtain it for his wife and child,—either an independent certificate, or have the name and facts showing the relations of the parties introduced into his own certificate concerning them all. Any other construction would open the door to extensive frauds that might be perpetrated, because there can be no distinction between an infant from the time he is born until he is 21 years of age. He, in law, is a minor—an infant—until his majority, under the control of his father and a part of his father's family. There are a great many coming here from 12 to 21 years of age, and any one who might choose to father these minor children might bring any number of them hither if the construction claimed for it is allowed. It would open the door to frauds and difficulties, whereas, now, on the construction adopted, the requirements of the act are very clear, and can be readily complied with by the party applying for a certificate for himself, by, at the same time, procuring one for his wife and child, or having the proper facts incorporated into his own certificate. These are the propositions which we adopt in the construction of the new act, and which we propose to apply in passing upon the questions arising in the cases that are now before us.