## CASE OF THE CHINESE WIFE.

### *In re* AH MOY, on *Habeas Corpus.*

(*Circuit Court, D. California.* September 22, 1884.)

1. CHINESE IMMIGRATION—RIGHT OF WIFE OF CHINESE LABORER TO ENTER.
    The wife of a Chinese laborer is not entitled to enter the United States on her husband's certificate since the passage of the act of 1884, but must furnish the certificate required by section 6 of the act. Per FIELD, J.

2. SAME—STATUS OF WIFE—RIGHT TO ENTER UNITED STATES.
    Upon the marriage of a Chinese woman, who was not before a laborer, to a Chinese laborer, she takes upon herself the *status* of the husband as one of the class who are not now permitted to enter the United States, without reference to her former *status.* Per SAWYER, J.

On *Habeas Corpus.*
*T. D. Riordan* and *L. I. Mowry*, for petitioner.
*S. G. Hilborn* and *Carroll Cook*, for the United States.

Before FIELD, Justice, and SAWYER, HOFFMAN, and SABIN, JJ.

FIELD, Justice. Too Cheong is a Chinese laborer, and resided in the United States, November 17, 1880, and until September, 1883, when he made a visit to China. While there he married a Chinese woman, who, from her appearance in court, must be a mere child. He returned in September of the present year, bringing his wife with him. Before his departure he obtained from the collector of the port the necessary certificate to enable him to return to the United States. It, however, gave him no authority to bring another person with him. The fiction of the law as to the unity of the two spouses does not apply under the restriction act. As a distinct person she must be regarded, and therefore must furnish the certificate required, either by section 4 or by section 6 of the act of 1884.

It is contended by the district attorney that the *status* of the petitioner is that of her husband, and therefore she must be regarded as a laborer, and, as such, required to furnish a laborer's certificate to establish her right to enter the United States. This position

might, in some instances, be tenable; but there are many callings of a man which the wife would not, from her relationship to him, be deemed to follow; such as that of a lawyer or physician, or of a merchant, or manufacturer. We think the case of a wife falls under the sixth section of the act. She is to be regarded as a person other than a laborer, and, as such, required to present the certificate from her government there designated. The language of the section, it is true, is involved and somewhat contradictory, but its meaning plainly is that every Chinese person, other than a laborer, entitled to enter the United States under the treaty, shall obtain from the Chinese government, or the government of which he is a subject, its permission to come within the United States, authenticated by its certificate, containing various particulars of himself and family, so as to clearly identify him; and, while such certificate is only *prima facie* evidence against our government, it is made the only evidence permissible on the part of the person seeking to enter the United States. It is only by this construction of the sixth section that consistency can be given to its somewhat confused language, and the manifest purpose of the act be carried out. It disposes of the application of the petitioner. She cannot land without the certificate there designated. The form prescribed by the section shows that the certificate is to be obtained by women as well as by men.

We are not insensible to the earnest remarks of counsel as to the hardship of separating man and wife. With our notions of the sacredness of that relation, they appeal with striking force. But here the relation was voluntarily assumed in the face of the law forbidding her coming to the United States without the required certificate. And they need not now be separated. He can return with and protect his child-wife in the celestial empire.

Writ discharged, and petitioner remanded.

SAWYER, J. In my judgment, this case presents one of the most important questions that can arise under the Chinese restriction act. It is, whether a Chinese laborer, who was residing in the United States on November 17, 1880, or who subsequently came to the country before August 4, 1882, and who has since returned to China under such conditions as entitle him to re-enter the United States, is entitled to bring into the United States with him, on his return, his wife, who has never before been in the country, and who, therefore, has no other right to enter than that derived from her *status* as wife of a Chinese laborer entitled to enter; that is to say, a right to enter by virtue of a right pertaining to the husband alone, and not as an independent, individual, personal right of her own. If such Chinese laborer has a right to bring into the country with him a wife who has never been here before, he must, upon similar grounds, be entitled to bring with him all his minor children; and, under this right, the number of Chinese laborers who are entitled to come to the United States

will be greatly extended beyond the number who can enter by virtue of their own individual rights. The question is also presented whether the wife of a Chinese laborer, who was not herself a Chinese laborer *in fact* before and down to the time of her marriage, by the act of marriage takes the *status* of the husband, and becomes, in contemplation of law, one of the class intended to be excluded, and as such is excluded, unless she can enter by virtue of the right pertaining to her husband. The construction of the statute upon the points stated is more doubtful, to my mind, than that of any other point raised under the act upon which I have been called to pass. As there is no appeal from the decision of this court, and as the question is one of the greatest importance, both to the Chinese laborers entitled to be in the United States and to the people of this country, the case was also reserved and ordered to be reargued before the circuit justice. Upon the first argument, the conclusion I reached, after considerable reflection, was that the husband is not entitled to bring his wife into the country, she being in fact a Chinese laborer, and never having been here before; and that, upon the marriage of the petitioner in this case with a Chinese laborer, she took upon herself the *status* of the husband as one of the *class* who are not now permitted to enter the United States, without reference to her former *status*. Upon further argument and consideration, the view before taken is confirmed.

Article 2 of the amended treaty provides that "Chinese subjects, whether proceeding to the United States as teachers, students, merchants, or from curiosity, together with their body and household servants, and *Chinese laborers who are now in the United States*, shall be allowed to go and come of their own free will and accord, and *shall be accorded all the rights, privileges, immunities, and exemptions which are accorded to the citizens and subjects of the most favored nations.*"

The argument in favor of petitioner's husband's right to land his wife is that the restriction act purports to be "An act to *execute* certain treaty stipulations relating to Chinese"—*not to abrogate* them; that all the provisions of the act scrupulously avoid everything that *expressly* conflicts with the treaty; that the treaty expressly provides that "all Chinese laborers who are now in the United States shall be allowed to go and come of their own free will and accord, and shall be accorded all the rights, privileges, immunities, and exemptions which are accorded to the citizens and subjects of the most favored nations;" that among the "rights and privileges" accorded to citizens of all other nations, are, to come of their own free will and accord, and to bring their wives and children with them; that the treaty, therefore, in clear, express, and unmistakable terms, secures these same rights and privileges to returning Chinese laborers of bringing their wives and children with them, as rights belonging and pertaining to the husband and father; that congress has not excluded their wives and children by name or in express terms; and that it is not to be presumed, from any general language used in the act, that

congress intended to override and abrogate the rights thus specific-ally and expressly secured by the treaty, thereby to that extent re-pealing or abrogating the treaty. The policy of the act manifestly is to exclude the entire *class* of Chinese laborers *as a class.* The wife of a Chinese laborer is, it seems to me, one of the class,—that her *status* partakes of and must follow the *status* of the husband as one of his class,—whether she, in fact, labors or not; and, as one of the class, I think the petitioner is excluded by the act, so far as any in-dividual personal right of her own is concerned.

Must the right of the husband to bring his wife with him be re-garded as one of the rights accorded to the citizens of the most fa-vored nations, within the meaning of the treaty cited? And, if so, must the language of the restriction act be construed in view of and in subordination to that of the treaty; and, being so construed, can it reasonably be so limited in construction as not to make it conflict with the treaty? The language of the act is very broad. It is pro-vided that "the coming of Chinese laborers to the United States be, and the same is hereby, suspended; and during such suspension it shall not be lawful for *any Chinese* laborer to come," etc. Section 1. "The master of any vessel who shall knowingly bring within the United States, on such vessel, and land, or *permit to be landed, any Chinese laborer,* from any foreign port or place, shall be guilty," etc. Section 2. "Any Chinese laborer," must mean all and every individ-ual of the entire class. It certainly embraces the wife, who is her-self, in fact, a laborer, irrespective of her *status* as the wife of a Chi-nese laborer. It is impossible not' to apply the language to such a a laborer, though a wife. And if I am right in the view I have taken, that the wife must be regarded as taking the *status* of the husband as one of the class excluded, then it must be equally applicable to the wife of any Chinese laborer, without regard to her *status* or act-ual occupation before marriage. So, also, the provision for the cer-tificate to be produced on the return as the only evidence of their right to re-enter the United Stated, can only be given to those who have been in the country before, and it must be given at the time of their departure. There is no exception in terms, in any of the lan-guage used in the act, of the wives or minor children of Chinese la-borers, and none can be fairly inferred from any language found in the act. We are not authorized to interpolate the exception into the act. If a Chinese man of the laboring class can bring his wife into the country as a right attaching and pertaining to himself, secured by the treaty, the converse of this rule must be true, and a Chinese woman residing in this country, of the laboring class, or a laborer, in fact, upon loss of her husband, or having no husband, may return to China with her laborer's certificate, marry, and return with her hus-band, who has never been in the country before. Upon the whole, after careful consideration, I am of the opinion that, even conced-ing the right to the Chinese laborer entitled to return to bring his

family with him, to be fairly covered by the language of the treaty, yet the provisions of the restriction act are inconsistent and in conflict with the provision of the treaty, so construed, and the statute, being later than the treaty, annuls or repeals it. The result is, the petitioner must be remanded. But if a wife, in the situation of the petitioner, does not take the *status* of her husband, and if the restriction act, as amended in 1884, is applicable to her case, then she has an individual, personal right to enter the United States, as not being a Chinese laborer, without regard to her husband; but, in that case, the certificate prescribed by section 6 is the only evidence upon which she can enter. The certificate she has not got, and the result is the same. I think the former the proper view.

It is greatly to be regretted that every question fairly arising upon the rights of the Chinese under the treaties with China and the restriction acts cannot be taken to the supreme court for an authoritative determination. These questions are of the highest international importance, and ought not to be finally adjudged by the local courts of original jurisdiction. It is earnestly hoped by us that congress will provide for writs of error or appeals in this class of cases.