In re LUM LIN YING.

(District Court, D. Oregon. February 2, 1894.)

No. 3,666.

1. CONFLICT OF LAWS—CHINESE MARRIAGES—VALIDITY.
   A marriage solemnized in China according to the laws and customs thereof, but while the bridegroom is in America, is not valid in America.

2. CHINESE—EXCLUSION ACTS.
   Where a woman, married according to Chinese laws to a Chinaman then in the United States, is brought to the United States by direction of her husband, both acting in good faith, she is entitled to land, there being no evidence that she is a prostitute.

Petition for writ of habeas corpus. Petitioner discharged.

B. B. Beekman and G. W. P. Joseph, for petitioner.
Daniel R. Murphy, for the United States.

BELLINGER, District Judge. It is admitted that the person claiming to be the husband of the petitioner is a merchant doing business in this city. Is the petitioner his wife? He testified that she was betrothed to him at two years of age, and that six months ago the marriage was solemnized according to the laws of China. He further testified that he had never seen his wife until her arrival here. Upon this last statement, I concluded to remand the petitioner, without further inquiry, but deferred to the urgent request of her attorneys to be heard as to this alleged China marriage, and as to the bona fides of the marriage transaction.

The only authority cited as to what constitutes the solemnization of marriage under Chinese laws is an article in the Encyclopedia Britannica by Prof. R. K. Douglas, professor of Chinese in King's College, London. According to this authority, marriage in China is an arrangement with which the parties most concerned have nothing to do. The duty of filial piety is said to be the final object of Chinese religious teaching, and, under its influence, parental will is a supreme authority, from which there is no appeal. Marriage, therefore, is not the result of acquaintanceship. "The bridegroom

rarely sees his betrothed until she has become his wife." The preliminaries are entirely arranged by professional go-betweens with the parents and families of the respective parties. The correspondence between the two, thus conducted, is in writing, and is of the briefest character. If the arrangements proceed satisfactorily, the particulars of the engagement are committed to writing upon duplicate cards. These are sewn together, and the ceremony is complete. The bride journeys to the home of her husband, who may then see her for the first time. This is the system under which the marriage relied upon in this case is claimed to have taken place, and is consistent with such marriage. The fact that such a marriage did take place, as testified to by the parties, is not contradicted, and is consistent with all the circumstances appearing in the case.

If the parties were married according to the laws of China, such marriage is valid here. Parsons on Contracts says that "it seems to be generally admitted, and is certainly a doctrine of English and American law, that a marriage which is valid in the place where it is contracted is valid everywhere. The necessity and propriety of this rule are so obvious and so stringent that it can hardly be called in question." This rule is subject to the qualification that a marriage made elsewhere would not be acknowledged as valid in a state, the laws of which forbade it as incestuous. Meyer's Federal Decisions says the general rule is undoubtedly that a marriage good by the law of the place of solemnization is good everywhere.

At the time of the marriage in question in this case, the husband was domiciled in the United States. This raises a question, as to whether China is the place of solemnization of the marriage. While the place of solemnization governs, by what rule shall such place be determined, when the parties are at the time within different jurisdictions? It is doubtful whether this is a China marriage. It is not enough, in my judgment, that such a marriage is valid under the laws of China. I am of opinion that it must not only be valid under such laws, but, to be valid elsewhere, must have been solemnized within the jurisdiction of those laws.

The parties in this case appear to have acted with the utmost good faith. On the 7th of last October the husband consulted a firm of lawyers of high standing in the city, touching the right of his wife to land here. The subject was carefully considered by them. Acting on their advice, a certificate was prepared and forwarded to China, identifying the husband, and setting forth that the petitioner was his wife, and that such certificate was intended to evidence her right to land here, by virtue of such relation. Money was forwarded for the journey, which she undertook in pursuance of the advice given her husband here. There is no doubt as to this. I have no right to assume, upon the whispered suggestions made on the authority of some of her countrymen, that she is a prostitute. There is no testimony tending to prove anything of the kind. Nor is there anything in the case calculated to arouse a suspicion against her. If, as the testimony shows, she is a girl of 18 years of age, who has made this journey in good faith under the circumstances

I have mentioned, she does not belong to any class of persons within the exclusion acts of congress, and her rejection would be a cruel injustice.

I am aware that there is danger of imposition in cases like this, but that danger exists in all cases where Chinese persons are landed, and must continue to exist until exclusion is made absolute.

The petitioner is discharged.