### UNITED STATES ex rel. SOO HOO HONG v. TOD, Com'r of Immigration.

(Circuit Court of Appeals, Second Circuit. May 7, 1923.)

No. 173.

**1. Aliens ⬗32(1)—Chinese entitled to judicial hearing on right to enter.**

A Chinese person, who is seeking to enter the United States, occupies a different position from one who has already entered, and the former is not entitled to a judicial hearing as to his right to enter, even where he claims citizenship, though one cannot be deported after entry, unless he has been given a judicial hearing on his claim of citizenship.

**2. Aliens ⬗32(13)—Courts cannot interfere with order of exclusion, unless fair hearing is denied.**

Where a Chinese person is not entitled to a judicial hearing, but may be excluded after an administrative hearing, the courts have no authority to interfere with an order of exclusion, unless the immigration officials have denied him a fair hearing, have made findings which are not supported by evidence, or have applied some erroneous rule of law.

**3. Aliens ⬗32(6)—Board can consider appearance of applicant in determining age.**

Where a Chinese man, who admittedly was born in China, sought to enter as the minor adopted son of a Chinese resident in this country, the immigration officials had a right to consider the appearance of the applicant in determining whether he was over 21 years of age, in which event he would not be entitled to enter as the son of a resident.

**4. Aliens ⬗32(7)—Unsupported testimony of applicant held not to show order of exclusion was erroneous.**

Where the testimony of an applicant for admission as the adopted son of a Chinese resident in this country, that he was under 21 years of age, was not supported by any other evidence, though the adopting father and a blood brother denied applicant was 24 years of age, as the brother had stated when he was admitted, a finding of the immigration authorities, based on the appearance of the applicant, that he was over 21 years of age, was not erroneous.

**5. Aliens ⬗32(13)—Findings of fact within jurisdiction of board of inquiry are conclusive.**

The findings of fact by the board of special inquiry, in a case within its jurisdiction, are conclusive.

---

⬗For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6. Aliens ⊛⇒32(8)—Evidence held not conclusive applicant was adopted son of resident.**

Evidence heard by the board of special inquiry on an application by a Chinese for admission as the adopted son of a resident *held* not conclusively to show that the applicant was in fact such adopted son.

Appeal from the District Court of the United States for the Southern District of New York.

Habeas corpus proceeding by the United States, on relation of Soo Hoo Hong, against Robert E. Tod, as Commissioner of Immigration, to procure the discharge of relator from custody under an order for deportation. Writ dismissed, and relator remanded to custody, and relator appeals. Affirmed.

Hervey, Barber & McKee, of New York City (Everett Flint Damon, of Boston, Mass., of counsel), for appellant.

William Hayward, U. S. Atty., of New York City (James C. Thomas, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and MAYER, Circuit Judges.

ROGERS, Circuit Judge. The question presented involves the right of one born in China and of the Chinese race to enter the United States. At the time he applied for admission he asserts that he was a minor, not having attained the age of 21 years, and that he was the adopted son of one Soo Hoo Dung Shew, who is conceded to be a Chinese merchant lawfully domiciled in Boston, Mass. The relator applied for admission at the port of New York, and was denied admission on the ground that he was not the minor son of Soo Hoo Dung Shew.

The relator was accorded a hearing before a board of special inquiry on April 3, 1922. A further hearing occurred on April 6, 1922. At its close he was advised that a conditional denial of his application for admission had been entered in his case, as the board was not satisfied that he was under 21 years of age, and that he would be allowed 10 days in which to present any further evidence, and that in the event of his deportation he would be returned to the country from which he came, and would be sent back in the manner in which he arrived, by the steamship company which brought him to this country.

An appeal was taken from this action of the board of special inquiry on April 17, 1922, to the Department of Labor at Washington, and the board of review, having considered the appeal and heard the appellant's counsel, recommended on April 24, 1922, that the excluding decision be affirmed. Thereupon the Assistant Secretary of Labor entered an order in accordance with that recommendation, and the Commissioner of Immigration was instructed to deport Soo Hoo Hong on May 11, 1922.

On May 10, 1922, a writ of habeas corpus was issued to the Commissioner of Immigration, and which required him to produce Soo Hoo Hong in the United States District Court for the Southern District of New York at a time stated therein. And on July 7, 1922, an order was entered dismissing the writ and remanding the relator to

⊛⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the custody of the Commissioner of Immigration at the port of New York. The case is in this court on an appeal from that order.

The treaty concluded between the United States and China in November, 1880 (22 Stat. 826), provided in article 2 that:

"Chinese subjects whether proceeding to the United States as teachers, students, merchants or from curiosity, together with their body and household servants, * * * shall be allowed to go and come of their own free will and accord, and shall be accorded all the rights, privileges, immunities and exemptions which are accorded to the citizens and subjects of the most favored nation."

And the treaty of 1894, concluded between these two nations in March, 1894 (28 Stat. 1210), provided in article 3 that:

"The provisions of this convention shall not affect the right at present enjoyed of Chinese subjects, being officials, teachers, students, merchants or travellers for curiosity or pleasure, but not laborers, of coming to the United States and residing therein."

But to entitle such Chinese subjects as are above described to admission to this country it required them to produce a certificate from their government. And section 6 of the Act of Congress of 1884 (23 Stat. 115, c. 220) provided that every Chinese person entitled by treaty or the act to come within the United States should obtain the permission and be identified by the Chinese government, in each case to be evidenced by a certificate issued by such government and setting forth certain specified details, with which we are not concerned in the case now before us.

These various provisions gave rise to a difference of opinion at one time upon the question whether the wife and minor children of a Chinese merchant, who is in or entitled to come into the country, can come in with him or after him without the certificate mentioned. The following cases permitted entry without the certificate: In re Chung Toy Ho, 42 Fed. 398, 9 L. R. A. 204; In re Lee Yee Sing (D. C.) 85 Fed. 635; United States v. Gue Lim (D. C.) 83 Fed. 136. But the following cases held that such wife and minor children could not enter without the certificate: In re Ah Quan (C. C.) 21 Fed. 182, 186; In re Ah Moy (C. C.) 21 Fed. 785; In re Wo Tai Li (D. C.) 48 Fed. 668; In re Lum Lin Ying (D. C.) 59 Fed. 682; In re Li Foom (C. C.) 80 Fed. 881.

The doubt which existed on this subject was ended by the Supreme Court in United States v. Mrs. Gue Lim, 176 U. S. 459, 468, 20 Sup. Ct. 415, 419 (44 L. Ed. 544). After holding that the wife of a Chinese merchant entitled to be in the United States could enter without the certificate, Mr. Justice Peckham, speaking for the court, said:

"In the case of the minor children, the same result must follow as in that of the wife. All the reasons which favor the construction of the statute as exempting the wife from the necessity of procuring a certificate apply with equal force to the case of minor children of a member or members of the admitted classes. They come in by reason of their relationship to the father, and whether they accompany or follow him, a certificate is not necessary in either case. When the fact is established to the satisfaction of the authorities that the person claiming to enter, either as wife or minor child, is in fact the wife or minor child of one of the members of a class mentioned in the treaty as entitled to enter, then that person is entitled to admission without the certificate."

The Case of Gue Lim turned upon the true meaning of section 6 of the Act of July 5, 1884, and the conclusion was that the section should not be construed to exclude wives and minor children, since this would obstruct the plain purpose of the treaty of 1880 to permit merchants freely to come and go. See Yee Won v. White, 256 U. S. 399, 400, 41 Sup. Ct. 504, 65 L. Ed. 1012.

1. The treaty of 1894 expired in 1904. Hong Wing v. United States, 142 Fed. 128, 73 C. C. A. 346; Yee Won v. White, supra. But the treaty of 1880, which was proclaimed on October 5, 1881, is still in force, including article 2 heretofore quoted. Act April 29, 1902, c. 641 (32 Stat. 176), as amended by Act April 27, 1904, c. 1630, § 5 (33 Stat. 428 [Comp. St. § 4337].), provides that all laws in force on April 29, 1902, regulating, suspending, or prohibiting the coming of Chinese persons into the United States on their residence therein, "are hereby re-enacted, extended and continued without modification, limitation or condition." The Rules Governing the Admission of Chinese, promulgated by the Commissioner General of Immigration, and which are now in force, provide in rule 9 concerning the admission of wives and children of exempts. That provision may be found in the margin.[1]

[1] "Subdivision 1. *Theory for Admission of.*—The Supreme Court having held that the lawful wife and children of a Chinese of the exempt classes may be admitted to the United States without presenting the certificate prescribed by section 6 of the Act of July 5, 1884, and the theory of said judicial exception to the provisions of the treaty and laws being that the dependent members of the household of a member of the exempt classes may enter without the prescribed certificate, because the husband and father is entitled to the company of the wife and the care and custody of the children, and because, such wife and children having no status of their own, to require them to present the certificate would be to attempt to exact an impossibility, the following conditions are prescribed with respect to the proof that shall be exacted in the cases of such wives and children applying for admission.

"Subd. 2. *Evidence Concerning.*—In every instance there shall be exacted convincing proof of the relationship asserted as the basis for admission. If the members of the household of the exempt apply in company with the latter, the certificate presented by the husband or father will be accepted as sufficient to cover the members of his household. If the husband or father is domiciled in the United States, evidence shall be required concerning him of the character specified by section 2 of the Act approved November 3, 1893, to establish the right of a domiciled merchant to readmission after temporary absence from the United States.

"Subd. 3. *How Membership in the Household Determined.*—In the absence of evidence to the contrary, it shall be assumed that a wife or unmarried daughter is a member of the household of the husband or father.

"Male children 14 years of age or under shall be conclusively presumed to be members of the father's household. Male children 15 years of age or over and under 18 years of age shall be presumed to be members of the father's household, but such presumption shall be subject to rebuttal. Such children 18 years of age or over and under 21 years of age shall be required to prove affirmatively and to the satisfaction of the Secretary of Labor that they are members of the father's household.

"Subd. 4. *Majors Not Admitted as.*—No Chinese male 21 years of age or over shall be permitted to enter the United States otherwise than as of his own individual status and capacity as a member of the exempt classes and upon exhibition of the certificate prescribed by section 6 of the Act of July 5, 1884, irrespective of whether he is or is not a member of the household of his exempt father."

That the adopted minor son of a Chinese merchant has the status of the person who adopted him was held by this court in United States v. Lee Chee, 224 Fed. 447, 140 C. C. A. 649. In Ex parte Fong Yim (D. C.) 134 Fed. 938, 941, the court declared that, if the adopting father has a right to enter the country, the right of the minor adopted child to enter is incident to the father's right to enter. And it was said that the question is perhaps not so much concerning the minor's right to enter as it is concerning the father's right to have him enter. United States ex rel. Shue Quey v. Pierce (D. C.) 285 Fed. 663, also supports the proposition that the adopted son of a Chinese merchant lawfully residing in the United States can bring into this country the members of his family, including an adopted son. And in the case now before the court it is not denied by the counsel representing the United States that an adopted minor son of a Chinese merchant lawfully resident in this country is entitled to admission. His right of entry is denied on the ground that the applicant has not satisfactorily made it to appear that he was under 21 years of age when the application to enter was made.

[1] It may be remarked in passing that in Moore's Digest of International Law, vol. 3, pp. 484, 485, it is stated that there are three methods of obtaining the rights of an American citizen. Those entitled to such rights are: (1) Children born in the United States and subject to the jurisdiction thereof. (2) Children born of American parents, whose fathers have resided within the United States. (3) Those embraced by the Naturalization Law, which would include those naturalized and their children minors at the time of naturalization, if within the jurisdiction of this country.

But in this case the alleged adopting parent does not claim to have been born in the United States or to have been naturalized under our laws; and the son alleged to have been adopted is admitted to have been born in China and has never been within the United States. He is clearly an alien Chinaman. His sole right to enter the country is based upon the claim that he is under 21 years of age and that he was adopted in China by one who is now a Chinese merchant resident within the United States.

In United States v. Woo Jan, 245 U. S. 552, 38 Sup. Ct. 207, 62 L. Ed. 466, the court had occasion to consider the difference between the situation of a Chinese person in the United States and one seeking to enter it, and held that the former was entitled to a judicial inquiry and determination of his rights, and that the latter was subject to executive action and decision. And in White v. Chin Fong, 253 U. S. 90, 40 Sup. Ct. 449, 64 L. Ed. 797, the distinction was adhered to, and it was held that one who had been in the United States and had departed from it with the intention of returning was entitled under existing legislation to have his right to do so judicially investigated, and not determined by executive action.

In Ng Fung Ho v. White, 259 U. S. 279, 42 Sup. Ct. 492, 66 L. Ed. 938, certain Chinese persons had entered the United States before May 1, 1917, the effective date of the General Immigration Act of February 5, 1917,[1] and within five years of the commencement of the

---

[1] Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼a et seq.

deportation proceedings. Referring to two of these Chinese the court, speaking through Mr. Justice Brandeis, said:

"Second. As to Gin Sang Get and Gin Sang Mo a constitutional question also is presented. Each claims to be a foreign-born son of a native-born citizen, and hence, under section 1993 of the Revised Statutes, to be himself a citizen of the United States. They insist that, since they claim to be citizens, * * * Congress was without power to authorize their deportation by executive order. If at the time of the arrest they had been in legal contemplation without the borders of the United States, seeking entry, the mere fact that they claimed to be citizens would not have entitled them under the Constitution to a judicial hearing. United States v. Ju Toy, 198 U. S. 253; Tang Tun v. Edsell, 223 U. S. 673."

It is indicated in the opinion in the above case that, if a claim of citizenship is made by one who is already a resident of the United States, he is entitled to a judicial trial of his claim, and it is said:

"Jurisdiction in the executive to order deportation exists only if the person arrested is an alien. The claim of citizenship is thus a denial of an essential jurisdictional fact. The situation bears some resemblance to that which arises where one against whom proceedings are being taken under the military law denies that he is in the military service. It is well settled that in such a case a writ of habeas corpus will issue to determine the status. Ex parte Reed, 100 U. S. 13; In re Grimley, 137 U. S. 147; In re Morrissey, 137 U. S. 157; Johnson v. Sayre, 158 U. S. 109. Compare Ex parte Crow Dog, 109 U. S. 556. If the jurisdiction of the Department of Labor may not be tested in the courts by means of the writ of habeas corpus, when the prisoner claims citizenship and makes a showing that his claim is not frivolous, then obviously deportation of a resident may follow upon a purely executive order, whatever his race or place of birth."

In the case now before the court, the relator was born in China of Chinese parents and has never been in the United States. It is not alleged that Soo Hoo Dung Shew, who claims to have adopted him, is an American citizen. The relator is clearly an alien, and, even if he claimed citizenship, because a minor and adopted child of an American citizen, he would not be entitled to a judicial hearing. In Ng Fung Ho v. White, 259 U. S. 276, 42 Sup. Ct. 492, 66 L. Ed. 938, the court, referring to Chinamen seeking entry and stopped at the border, and who had never resided in the United States, declared that:

"The mere fact that they claimed to be citizens would not have entitled them under the Constitution to a judicial hearing. United States v. Ju Toy, 198 U. S. 253; Tang Tun v. Edsell, 223 U. S. 673."

[2] It is evident, therefore, that the relator, Soo Hoo Hong, being an alien who has not been a resident of the United States, is not entitled to have his right of entry determined in a judicial proceeding, but he may be denied admission by the immigration authorities and ordered returned to the country whence he came, and that the courts have no authority to interfere, unless the immigration officials have denied him a fair hearing, or have made findings which are not supported by evidence, or have made application of some erroneous rule of law. Ng Fung Ho v. White, 259 U. S. 276, 284, 42 Sup. Ct. 492, 66 L. Ed. 938; Chin Yow v. United States, 208 U. S. 8, 28 Sup. Ct. 201, 52 L. Ed. 369; American School of Magnetic Healing v. Mc-

Anulty, 187 U. S. 94, 23 Sup. Ct. 33, 47 L. Ed. 90; Gegiow v. Uhl, 239 U. S. 3, 36 Sup. Ct. 2, 60 L. Ed. 114.

In the instant case the relator had a full hearing before the immigration officials, and they have decided against his admission, and their decision is conclusive, unless the case comes within one of the exceptions above referred to, and it is shown that the immigration officials have in some way unlawfully acted or abused their discretion or powers. In this case the age of the relator was the principal question which the board of inquiry had to determine. If the relator was over 21 years of age when he arrived at the port of New York, it is conceded that he was not entitled to admission as the adopted son of a Chinese merchant resident in the United States. At the hearing before the board of inquiry the relator testified that he was 20 years old. His blood brother Wong Ock, who had applied for admission at New York in December, 1921, four months prior to the arrival of the relator, had testified at the hearing relating to his own admission as follows:

"Q. Have you any blood brother or sisters? A. One blood brother, Soo Hoo Hong [the relator], living in the same village with me, 24 years old, single."

Soo Hoo Dung Shew, who claims to have adopted the relator, had his attention called to the testimony of Wong Ock that the relator's age was 24 years, and he testified that Wong Ock made a mistake. Soo Hoo Hoy, who said he was the foster brother of the relator, testified as follows:

"Q. Your foster brother, Wong Ock, testified his brother, Soo Hoo Hong, was 24 years of age in this office December, last year. A. I think he made a mistake. He is not 24."

Wong Ock was called and testified as follows:

"Q. How old is he [the relator]? A. 20; born K. S. 29–12; don't know the day.
"Q. When you were examined in this office on December 21st, you testified that Soo Hoo Hong was 24 years of age. A. I don't remember; I don't know.
"Q. Did you state that Soo Hoo Hong was 24 years of age? A. No; I didn't say that.
"Q. It is a matter of record that you did say it. A. I said he was 20 last year."

At the close of the hearing the chairman of the board stated that Wong Ock and Soo Hoo Hong "both appear to be well over 21 years of age, and he informed the relator as follows:

"You are advised that a conditional denial has been entered in your case, as this board is not satisfied that you are under 21 years of age, because of the fact that your brother, Wong Ock, when examined in this office on December 21, 1921, made an unequivocal statement that you were on that date 24 years of age. Wong Ock also gave his own age as 20 on December 8, 1921, the time he was apprehended as a stowaway coming from Marseilles, France. You will be allowed 10 days in which to present any further evidence."

The action of the board was unanimous, and the relator appears to have presented no further testimony. The inspector in charge at New York, in communicating the action taken to the Commissioner

General of Immigration at Washington, called attention to the discrepancy in the testimony taken and added:

"The personal appearance of the present applicant indicates that he is considerably over 21 years of age. * * * It is recommended that the decision of the board be sustained."

The Assistant Commissioner General appears to have reviewed the case with a considerable degree of care in a communication of some length addressed to the Assistant Secretary of Labor under date of April 19, 1922. He states in conclusion that:

"After going over the records in this case, the bureau is somewhat surprised at the action of the New York office in admitting Wong Ock last December. It seems obvious that he would have been excluded as a Chinese not entitled to enter the United States, had his case been properly handled, and the prior records of Soo Hoo Dung Shew and Soo Hoo Hoy even perfunctorily reviewed. His admission under the Immigration Law in the face of the proved fact that he was a stowaway is inexplicable. His case, under the Chinese Exclusion Laws, was weak at best; but that of the present applicant is even weaker. The bureau is convinced, after careful consideration, that an attempt is being made in this case to secure the admission to the United States of a Chinese person not entitled to enter without presenting a section 6 certificate, and a person who apparently is not entitled to such certificate. It is recommended that the appeal be dismissed."

[3, 4] The only testimony that the relator was under 21 years of age is that given by himself. It is contradicted by the testimony given by his blood brother a few months before, who declared that he was at that time 24 years of age. This testimony that he was 24 years old is impaired by the testimony given upon the present application and above referred to. But that testimony simply denies that the relator is 24 years old. Not one of the witnesses examined, except the relator, stated that the present applicant's age was under 21 years. The board of inquiry, in considering the testimony, had the right to take into consideration the appearance of the applicant, and, being satisfied by his appearance that he was well over 21 years old, they denied him admission. The weight of the testimony was for the board to determine, and not for this court. The fact of the relator's minority was one which under the law was to be established to the satisfaction of the Executive Department, and this court cannot say that in coming to the conclusion which that department reached it acted arbitrarily and contrary to the evidence. We cannot hold that the board of inquiry was bound to accept the relator's unsupported statement that he was under 21 years of age, when his appearance showed to the board's satisfaction that the statement was untrue.

[5] It is the opinion of the court that it cannot be said that the relator was denied a fair hearing, or that the finding was not supported by any evidence. The board of special inquiry heard and saw the witnesses, and they had a right to draw their own conclusion from the personal appearance of the relator and the testimony before them as to whether he was over or under 21 years of age. The case was within the jurisdiction of the board and its finding of fact is conclusive. United States v. Ju Toy, 198 U. S. 253, 25 Sup. Ct. 644, 49 L. Ed..

1040; Ng Fung Ho v. White, 259 U. S. 276, 284, 42 Sup. Ct. 492, 66 L. Ed. 938.

[6] If the relator had been under 21 years of age when he applied for admission, he would nevertheless not have been entitled to admission, unless it also appeared that he had been adopted by Soo Hoo Dung Shew as alleged. In view of the conclusion we have above expressed, it is not very important to consider whether or not the relator was adopted as claimed. We shall, however, briefly refer to some of the testimony which the record contains, and which discloses its inconclusive character. The record discloses a letter addressed on April 29, 1922, to the Chinese inspector in charge at New York by the Acting Commissioner General, in which he says:

"An examination of prior records, and a comparison of the statements made in the Soo Hoo Hong Case with those made when Wong Ock was an applicant for admission led the bureau to only one conclusion, and that is that Soo Hoo Hong clearly is not the son by adoption of Soo Hoo Dung Shew."

If the comparison alluded to in the letter of the Acting Commissioner General, quoted above, does not lead clearly to the conclusion that Soo Hoo Hong is not the son by adoption of Soo Hoo Dung Shew, it certainly does not clearly show that he is. The conflict in the testimony was not confined to the question of the relator's age. For example, Wong Ock, alleged blood brother of the relator, at the time of his own admission in December, 1921, testified as follows:

"Q. Do you know your blood mother's name? A. Soo Hoo.
"Q. Was your blood mother related to your foster father? A. No; just the same family name."

But Soo Hoo Hong, the relator, testified as follows:

"Q. Describe your foster father's sister? A. That is my mother.
"Q. Then your foster father is your blood uncle? A. Yes."

And Soo Hoo Dung Shew testified as follows:

"Q. Do you recognize this photograph? A. Soo Hoo Hong [the relator].
"Q. What relation is this boy to you? A. My sister's son; I adopted him; my sister is dead."

But the records on file in the Bureau of Immigration show that in 1906 Soo Hoo Dung Shew testified that he had no sisters and never had any; and Soo Hoo Hoy, testifying in 1906, stated that his father, Soo Hoo Dung Shew, had no brothers or sisters, and in December, 1921, he testified as follows:

"Q. Has your father any brothers or sisters living? A. No; he had one brother, who died three years ago."

He made no reference to his father ever having had a sister at any time.

The order is affirmed, and the relator is remanded to the custody of the Commissioner of Immigration at the port of New York.