UNITED STATES ex rel. JEW LEE et al. v. BROUGH, Chinese Inspector.

(District Court, S. D. New York. December 6, 1926.)

1. Aliens ⬲32(13)—Evidence held to support Department of Labor's findings that Chinamen attempting to smuggle into country were aliens.

Evidence *held* to support findings of Department of Labor that Chinamen apprehended during attempt to smuggle into country were aliens.

2. Habeas corpus ⬲71—Chinamen apprehended during attempt to smuggle into country held not entitled to bail pending habeas corpus.

Chinamen apprehended during attempt to smuggle into country *held* not entitled to bail pending determination of writ of habeas corpus after order of deportation.

3. Aliens ⬲54(2)—Person attempting to enter country, claiming citizenship, is not entitled to have claim determined in judicial proceedings.

Person attempting to enter country through official immigration channels, claiming right to enter because of citizenship, is not entitled to have claim determined by judicial proceedings, but may be denied admission by immigration authorities.

4. Aliens ⬲32(2)—Chinamen apprehended during attempt to smuggle into country held not entitled to judicial hearing on claim of citizenship (Act May 5, 1892, § 6, as amended by Act Nov. 3, 1893, § 1 [Comp. St. § 4320]; Chinese Exclusion Act Sept. 13, 1888, § 7 [Comp. St. § 4308]; Chinese Rules, rule 1).

Chinamen apprehended during attempt to smuggle into country, and ordered deported by Secretary of Labor because of being found in the United States in violation of Act May 5, 1892, § 6, as amended by Act Nov. 3, 1893, § 1 (Comp. St. § 4320), and entry in violation of Chinese Exclusion Act Sept. 13, 1888, § 7 (Comp. St. § 4308), and rule 1, Chinese Rules, *held* not entitled to judicial trial on issue of claimed citizenship.

Habeas Corpus. Proceeding by the United States, on the relation of William H. Wohlstatter, next friend of Jew Lee, and others, against A. W. Brough, Chinese Inspector in charge at the Port of New York. Writ dismissed, and relators remanded to the custody of the Commissioner of Immigration for deportation.

James C. Thomas, of New York City (E. F. Damon, of Boston, Mass., of counsel), for relators.

Emory R. Buckner, U. S. Atty., and Nathan R. Margold, Asst. U. S. Atty., both of New York City, for respondent.

GODDARD, District Judge. This writ of habeas corpus has been sued out in behalf of three men of the Chinese race, who have been

ordered deported by the Secretary of Labor under the Immigration Act of February 5, 1917 (Comp. St. § 4289¼a et seq.), on the grounds that they were not in possession of unexpired immigration visas at the time of their entry into this country; that they entered by land at a place other than a designated port of entry; that they were persons likely to become public charges; that they were found in the United States in violation of section 6 of the Act of May 5, 1892, as amended by the Act of November 3, 1893, § 1 (Comp. St. § 4320), being Chinese laborers not in possession of certificates of residence; and that they entered the United States in violation of section 7 of the Chinese Exclusion Act of September 13, 1888 (Comp. St. § 4308), and rule 1 of the Chinese Rules.

[1] The relators were arrested in Vermont, about 4½ miles away from the Canadian border, while proceeding south in an automobile. The immigration patrol had discovered the automobile when three miles from the Canadian border, pursued it, and after a chase of about a mile and a half succeeded in catching up with it and bringing it to a stop. One of the relators stated that about ten minutes before they had left a small Canadian town near the border. Three other Chinamen were in the automobile, and two white men, one of whom was driving the car. While all these Chinamen claim they were strangers to one another, they told practically the same stories, and all claimed American birth. One claimed that he returned to China as a child, and remained there until the early spring of 1926, when he sailed as a stowaway on a vessel to Canada; that he smuggled into Canada across the continent to Montreal, and happened to take this automobile, in which he met the other Chinamen, in an attempt to smuggle into this country. All six Chinamen admitted that they were caught while attempting to get into this country, and from the undisputed facts in the records it appears that they were apprehended within a few minutes after they crossed the Canadian border at Vermont. Of course, they had not been inspected or paid a head tax.

The only evidence as to birth which each relator offered at the hearing accorded him was his own statement to that effect. None of them presented birth certificates or other documents in support of this claim, or stated that he could procure such documents. One of the relators (Jew Lee) testified at the hearing that there was no one who could testify to the fact that he was born in this country. Another of the relators (Wong Lee) testified that Lee Wing, a Chinaman living in Boston,

knew he was born in San Francisco. Further questions revealed that this Lee Wing is only 29 years of age, while the relator is 34, and, as Wong Lee claimed he left the United States when about 5 years old, obviously Lee Wing could not have known the facts concerning Wong Lee's birth in the United States. Hong Chong, the third of the relators, testified he went to China when he was 13 years old. He nevertheless did not remember anything about San Francisco, where he claimed he was born, or about his alleged childhood days in this country. At the hearing the testimony of each of the relators contained so many contradictions and statements which were obviously false that the fair conclusion is that they were not born in this country.

The contention advanced on behalf of the relators is that they are native-born citizens of the United States, and as such are not subject to the immigration laws or to the Chinese exclusion laws, which provisions they admittedly violated if they were aliens, and their counsel urges (1) that this court has power in its discretion to admit the relators to bail before the writ is disposed of and an appeal taken; (2) that, if the court has this power, it should be exercised in favor of the relators; (3) that the relators are entitled to a judicial trial on an issue of citizenship.

[2] It is unnecessary to consider whether this court has the discretionary power to admit the relators to bail before the writ is disposed of and an appeal taken, because the facts pertaining to the relators as disclosed by the record are not such, as in my opinion, to justify admitting them to bail pending the determination of this writ if such discretionary power exists. Moreover, the matter of such bail is not of particular importance, as this court is passing on the merits of the writ with little delay. The principal question is whether the relators are entitled to a judicial trial on the issue of citizenship.

[3, 4] It is settled that, when a person attempts to enter this country through the official immigration channels, and claims the right to enter on the ground that he is an American citizen, he is not entitled to have his claim determined in a judicial proceeding, but may be denied admission by the immigration authorities, and the courts have no authority to interfere, provided he has had a fair hearing, and the findings of the immigration officials are supported by the evidence, and no erroneous rule of law has been applied. U. S. v. Ju Toy, 198 U. S. 253, 25 S. Ct. 644, 49 L. Ed. 1040. See Hoo Hong v. Tod, etc. (C. C. A.) 290 F. 689. In Ng Fung Ho v. White, 259 U. S. 276, at 279, 42 S. Ct.

492, 494 (66 L. Ed. 938), Mr. Justice Brandeis, in the unanimous opinion of the court, states:

"As to Gin San Get and Gin Sang Mo a constitutional question also is presented. Each claims to be a foreign-born son of a native-born citizen, and hence, under section 1993 of the Revised Statutes [Comp. St. § 3947], to be himself a citizen of the United States. They insist that, since they claim to be citizens, Congress was without power to authorize their deportation by executive order. If at the time of the arrest they had been in legal contemplation without the borders of the United States, seeking entry, the mere fact that they claimed to be citizens would not have entitled them under the Constitution to a judicial hearing. United States v. Ju Toy, 198 U. S. 253 [25 S. Ct. 644, 49 L. Ed. 1040]; Tang Tun v. Edsell, 223 U. S. 673 [32 S. Ct. 359, 56 L. Ed. 606]. But they were not in the position of persons stopped at the border when seeking to enter this country. Nor are they in the position of persons who entered surreptitiously. See United States v. Wong You, 223 U. S. 67 [32 S. Ct. 195, 56 L. Ed. 354]. They arrived at San Francisco, a regularly designated port of entry, were duly taken to the immigration station, and, after a protracted personal examination, supplemented by the hearing of witnesses and the examination of reports of immigration officials, were ordered admitted as citizens. Then they applied for and received their certificates of identity. Fifteen months after the entry of one and six months after the entry of the other, both were arrested, on the warrant of the Secretary of Labor, in Arizona, where they were then living. The constitutional question presented as to them is: May a resident of the United States who claims to be a citizen be arrested and deported on executive order? The proceeding is obviously not void ab initio. United States v. Sing Tuck, 194 U. S. 161 [24 S. Ct. 621, 48 L. Ed. 917]. But these petitioners did not merely assert a claim of citizenship. They supported the claim by evidence sufficient, if believed, to entitle them to a finding of citizenship. The precise question is: Does the claim of citizenship by a resident, so supported both before the immigration officer and upon petition for a writ of habeas corpus, entitle him to a judicial trial of this claim?"

Judge Brandeis clearly indicates that right to a judicial hearing would not apply to one who entered surreptitiously, and also expressly states that the relator was a resident, thus emphasizing the distinction between the rights of a resident and one who is not, and this difference is of vital importance. In U. S. v. Woo Jan, 245 U. S. 552, 38 S. Ct. 207, 62 L. Ed. 466, the Supreme Court held that the situation of a Chinese person in the United States and one seeking to enter it were different; that the former was entitled to a judicial determination of his rights, and that the latter was subject to executive action. This same distinction was applied in White v. Chin Fong, 253 U. S. 90, 40 S. Ct. 449, 64 L. Ed. 797.

It would be remarkable if a person entering this country through a port of entry or regular official channel, making the claim of citizenship, is denied the right to have his claim determined in a judicial proceeding, and that one who is caught while attempting to smuggle into the country is entitled to such judicial proceeding. I find no authority to the contrary, and it is evident that the most favorable treatment that reasonably could be expected for one caught surreptitiously entering the country would be that his claim of citizenship would be dealt with in a manner similar to one seeking to enter in the regular immigration channels and making the claim of citizenship, where, if a resident seeking to enter this country, he might bring himself within the rule in U. S. v. Woo Jan, supra, and White v. Chin Fong, supra, and be entitled to a judicial hearing, and, if not a resident, his claim to citizenship would be subject to determination by the immigration authorities. Concededly the relators in the case at bar are not residents. It seems to me that the following statement of Mr. Justice Holmes in U. S. v. Ju Toy, 198 U. S. 253, at page 263, 25 S. Ct. 644, 646 (49 L. Ed. 1040), applies to the situation these relators have gotten themselves into:

"The petitioner, although physically within our boundaries, is to be regarded as if he had been stopped at the limit of our jurisdiction and kept there, while his right to enter was under debate. If, for the purpose of argument, we assume that the Fifth Amendment applies to him, and that to deny entrance to a citizen is to deprive him of liberty, we nevertheless are of opinion that with regard to him due process of law does not require a judicial trial. That is the result of the cases which we have cited, and the almost necessary result of the power of Congress to pass exclusion laws. That the decision may be intrusted to an executive officer, and that his decision is due process of law, was affirmed and explained in Nishimura Ekiu v. United States, 142 U. S. 651, 660 [12 S. Ct. 336, 35

L. Ed. 1146], and in Fong Yue Ting v. United States, 149 U. S. 698, 713 [13 S. Ct. 1016, 37 L. Ed. 905], before the authorities to which we already have referred."

The case of Lee Sim v. U. S. (C. C. A.) 218 F. 432, where a Chinaman had been arrested in a freight car in Buffalo and was ordered deported after an administrative hearing, on the ground that he was unlawfully within the United States, in that he had entered without inspection, he testified at the hearing that he was born in New York, and that he had smuggled from Canada into Buffalo in the freight car where he was arrested. It was contended in his behalf that the Department of Labor had no right to deport him, and to find against his claim of citizenship, merely on an administrative hearing and petition for writ of habeas corpus on the ground that he was entitled to a judicial hearing on the issue of citizenship and that the immigration laws did not apply to him. The District Court denied the application for a writ of habeas corpus, and on appeal the Circuit Court of Appeals affirmed the order of the District Court, holding that the Department of Labor had authority to hear and determine his claim and that he had no right to a judicial trial. See also Sit Sing Kum v. U. S. (C. C. A.) 277 F. 191; Jung See v. Nash (C. C. A.) 4 F.(2d) 639.

Counsel for the relators urges that the Circuit Court of Appeals of this Circuit has, in the case of U. S. ex rel. Singleton v. Tod, 290 F. 78, held that relators similarly situated as the relators in the case at bar were entitled to have their claims determined in a judicial proceeding. The facts in the Singleton Case may be distinguished from those in the case at bar. In the Singleton Case a warrant of arrest was issued by the Assistant Secretary, "charging that he was found in the United States in violation of the Immigration Act. * * *" The relator, a Chinaman, was taken off a train at Charleston, S. C. while traveling in a Pullman car, having boarded the train at St. Petersburg, Fla. He claimed, not merely that he was born in the United States, but that since his birth, 27 years ago, he had resided in this country, and there was nothing in the record which showed conclusively to the contrary.

For the reasons stated above, the relators are not entitled to a judicial trial, and, as the findings of the Department of Labor that the relators are aliens are amply supported by the evidence, the writ is dismissed, and the relators remanded to the custody of the Commissioner of Immigration for deportation.